OPINION *Page 2 
{¶ 1} Defendant-appellant John Paul Gomez [the father] appeals the decision of the Noble County Common Pleas Court, which allocated parental rights and responsibilities over the parties' two children to plaintiff-appellee Dagmar Gomez [the mother]. The main issue is whether such allocation is in the children's best interests. The father also alleges that the trial court had a predetermined mindset to grant custody to the mother. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} The parties were married in October 2003. They had two children, whose dates of birth are in August 2003 and March 2005. Soon after the youngest child's birth, the parties' were threatened with eviction from their apartment near Steubenville, Ohio. The parties then separated. The mother moved into her grandparents' house in Caldwell, Ohio with the children, while the father moved to Moon Township, Pennsylvania where he worked.
 {¶ 3} The mother filed for divorce in October 2005. Both parties sought custody of the children. At the hearing on temporary orders, the father agreed to grant temporary custody to the mother. The father's visitation was to occur on Saturdays. This order was journalized on December 20, 2005.
 {¶ 4} In January 2006, the father filed a motion to hold the mother in contempt for disallowing Saturday visitation on Christmas Eve and New Years Eve. The court heard the motion and found the mother at fault but not in contempt. The court modified its temporary order by requiring the next two visitation transfers to occur at the Sheriff's Department and by allowing overnight visitation thereafter.
 {¶ 5} The trial was held on February 1, 2006. The mother testified that when the father began working in Pennsylvania, he was often gone up to fourteen hours a day six days a week. (Tr. 8). She said that she stayed home full-time with the children from the time the first child was born until a few months after the parties' separation when she had to obtain employment. She stated that since they separated in March 2005, the father only visited on some Sundays. (Tr. 13, 36). She explained that the *Page 3 
children's local support base included her grandparents with whom she lived, her mother, her sister, her aunt and other family members. (Tr. 44).
 {¶ 6} The father testified that since November 2005, he has lived in an apartment with a six-month lease in Moon Township that he has prepared for the children to occupy. (Tr. 63). He stated that he would soon be starting a new job five minutes from his house where he would work 8:15 a.m. until 5:30 p.m. five (infrequently six) days a week. (Tr. 66-68). He found a pediatrician and a day care nearby. (Tr. 105). He noted that he is a permanent resident of the United States and citizen of Gambia, West Africa. (Tr. 64-65). He advised that he has no relatives nearby. (Tr. 96). He presented his own testimony and the testimony of other's concerning his dedication to his children.
 {¶ 7} After the February 1st trial, the trial court allocated parental rights and responsibilities to the mother. On February 3, 2006, the father filed a request for findings of fact and conclusions of law. The court entered judgment on February 17, 2006, granting the divorce, dividing marital property and ordering child support among other things. Specific to the issues herein, the court's entry made certain factual findings and allocated parental rights and responsibilities to the mother concluding that such was in the children's best interests. The father filed timely notice of appeal and a pro se brief.
 ASSIGNMENTS OF ERROR NUMBERS ONE AND THREE {¶ 8} Appellant sets forth three assignments of error. The first and third contain some duplicative arguments. These assignments provide as follows:
 {¶ 9} "THE TRIAL COURT ERRED IN `ALLOCATING' PLAINTIFF-APPELLEE, RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILDREN BASED ON AN ESTABLISHED CUSTODIAL ENVIRONMENT, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE ON RECORD; EXCLUDING IN ITS FINDINGS OF FACT, `CONCLUSIONS OF LAW,' IN ACCORDANCE TO TITLE VI OF OHIO'S CIVIL RULE 52."
 {¶ 10} "THE TRIAL COURT ERRED IN NOT CONSIDERING THE `BEST INTEREST OF THE CHILDREN' ACCORDING TO R.C. 3109.04(F)(1), GIVEN THE FACT THAT A CHANGE OF CIRCUMSTANCES DID OCCUR IN THE LIVES OF THE *Page 4 
MINOR CHILDREN; AND GRANTING CUSTODY TO THE PARENT THAT MEET THE MOST CRITERIA IN ACCORDANCE TO THE STATUTE ENACTED BY THE LEGISLATURE."
 {¶ 11} We must first dispose of the father's changed circumstances arguments presented under both the first and third assignments of error. In assignment of error number one, he quotes Civ.R. 52 and claims that the trial court failed to make a proper conclusion of law when it granted custody in paragraph two of the trial court's conclusions of law. In that paragraph, the court named the mother as the residential parent and concluded that such allocation is in the best interests of the children.
 {¶ 12} Any general arguments regarding the sufficiency of the entry are discussed during the review of the best interest factors. However, the father's specific argument here is that the trial court's findings and conclusions were improper because the court failed to refer to the items set forth in R.C. 3109.04(E)(1)(a) and failed to find changed circumstances. He also states that the court can modify custody if the harm caused by the change is outweighed by the advantages of a change in environment, citing R.C. 3109.04(E)(1)(a)(iii). He reiterates his reliance on changed circumstances in his third assignment of error.
 {¶ 13} The father apparently believes that these sections apply because temporary custody was modified to regular custody. However, the references to modification of custody in R.C. 3109.04(E) do not apply when changing a temporary order of custody. This court has previously explained the situation as follows:
 {¶ 14} "Ohio law provides that R.C. 3109.04(E), concerning modification of a prior decree, is inapplicable to temporary orders with custody pending. See, e.g., State ex rel. Thompson v. Spon (1998),83 Ohio St.3d 551, 554-555, 700 N.E.2d 1281. See, also, Thompson v.Thompson (1987), 31 Ohio App.3d 254, 257, 511 N.E.2d 412; Schoffner v.Schoffner (1984), 19 Ohio App.3d 208, 209, 483 N.E.2d 1190; Spence v.Spence (1981), 2 Ohio App.3d 280, 281-282, 441 N.E.2d 822.
 {¶ 15} "The * * * parenting order in this case was pendente lite; it was temporary. Pursuant to Civ.R. 75(N)(1), the court may make a temporary order regarding allocation of parental rights and responsibilities during the pendency of an action for divorce. When the court later fashions a custody order in finally resolving *Page 5 
the divorce, it is not modifying a prior final custody decree; rather, it is entering a permanent custody order for the first time.Spon, 83 Ohio St.3d at 554-555, 700 N.E.2d 1281; Garnet v. Garnet (Mar. 2, 1981), 7th Dist. No. 80CA31." Schmidli v. Schmidli, 7th Dist. No. 02BE63, 2003-Ohio-3274, ¶ 21-22.
 {¶ 16} Here, there was a temporary custody order and then an original allocation decree. As such, R.C. 3109.04(E) and its change in circumstances test are inapplicable. Rather, the court's duty was only to determine the children's best interests as in all original allocation cases. Regarding this issue, the father makes best interests arguments under both his first and third assignments of error.
 {¶ 17} Under the first assignment of error, the father contends that the court erred in allocating parental rights based upon an "established custodial environment." He states that he agrees with the legislative preference to keep the children in their established custodial environment but urges that the children here do not have such an environment. Rather, he claims that the evidence shows that the mother moves the children between two home settings. He is referring here to her admission that the children have stayed overnight with her at her male friend's house. That is, when she was questioned about how many times she and her children stayed at a boyfriend's house in Cambridge, she estimated five to seven times. (Tr. 30-31).
 {¶ 18} Under his third assignment of error, the father goes through the statutory best interest factors and contends that more factors fall on his side than on the mother's. He notes that he researched and chose a day care and a pediatrician near his home. He points to a video exhibit showing him with his children. He points out that he produced many character witnesses. He reiterates his argument about the children staying in the home of their mother's boyfriend. He points out that he is current in child support. He notes that he produced evidence that he is in good physical and mental health and that neither party committed any crimes relevant to the statutory factors. He acknowledges that he lives in Moon Township, Pennsylvania. Finally, he complains that the mother has denied him visitation in the past. He concludes that the decision on best interests is against the mangiest weight of the evidence. *Page 6 
 {¶ 19} In a divorce action, the court must allocate parental rights and responsibilities in accordance with the children's best interests. R.C. 3109.04(A), (B)(1). To determine the best interests of the children, the court shall consider all relevant factors, including, but not limited to:
 {¶ 20} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 21} "(b) If the court has interviewed the child in chambers * * * the wishes and concerns of the child, as expressed to the court;
 {¶ 22} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 23} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 24} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 25} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 26} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 27} "(h) Whether either parent [involving certain offenses or adjudications relative to the child or family];
 {¶ 28} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 29} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C.3109.04(F)(1).
 {¶ 30} A decision regarding the custody of a child shall not be reversed absent an abuse of discretion. Davis v. Flickinger (1997),77 Ohio St.3d 415, 416-417. In order to find an abuse of discretion, the reviewing court must conclude that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983)5 Ohio St.3d 217. If the trial court's decision concerning the child's best interests is not supported by competent, credible evidence, then it is *Page 7 
unreasonable and may be reversed. In re Nice (2001),141 Ohio App.3d 445, 455 (7th Dist.).
 {¶ 31} The trial court, rather than the reviewing court, is in the best position to weigh the testimony and observe the witnesses' demeanor, voice inflections, and gestures in order to gauge their credibility. Davis, 77 Ohio St.3d at 418. This doctrine is said to be even more crucial in custody cases. Id. at 419.
 {¶ 32} We also note that no one best interest factor is dispositive.Nentwick v. Nentwick (Feb. 18, 1998), 7th Dist. No. 96JE27. Furthermore, the court can consider factors that are not specifically listed. R.C.3109.04(F)(1) ("including, but not limited to"). Again, the weighing of the factors is the discretionary function of the trial court.
 {¶ 33} Here, both parents wanted custody. See R.C. 3109.04(F)(1)(a). The court discussed how the father established a residence out of state near Pittsburgh, Pennsylvania. See R.C. 3109.04(F)(1)(j). The court stated that the father is a United States resident from West Africa who had no family nearby. See R.C. 3109.04(F)(1)(j) and (c). The court pointed out that the mother and children live with the mother's grandparents. See R.C. 3109.04(F)(1)(c). The court explained that the mother's mother lives in close proximity. See id. As noted supra, the mother had other family in the area as well. The court also found that the children have had limited interaction with the father. See id.
 {¶ 34} On the other hand, the court pointed out that the mother had not fostered visitation with the father. See R.C. 3109.04(F)(1)(i) and (f). Additionally, the court recognized that the father was current in his support obligation. See R.C. 3109.04(F)(1)(g).
 {¶ 35} The children's wishes were not determined due to their young age. See R.C. 3109.04(B)(1), (2), (F)(1)(b). As the father points out, neither parent was guilty of child abuse, neglect or any offense listed in R.C. 3109.04(F)(1)(h). The trial court made no mention of the health of the parties, but there is no dispute on this factor as the father testified that neither party had medical issues. See R.C. 3019.04(F)(1)(3). (Tr. 97-98).
 {¶ 36} As for the children's adjustment to home, school and community under R.C. 3109.04(F)(1)(d), both children were too young for school. (Tr. 97). The court *Page 8 
did not detail adjustment to home and community. But as aforementioned, the court did explain what close relatives live in the children's home and in their surrounding community.
 {¶ 37} Before concluding on the weight of the evidence, we shall pause here to address any remaining arguments on the sufficiency of the court's entry as related to an "established custodial environment" as the father calls it. Although a more thorough judgment entry regarding adjustment to home and community is desirable, the question before us is simply whether or not the court's entry was sufficiently specific or detailed to permit a review of the case. See Civ.R. 52 ("court shall state in writing the conclusions of fact found separately from the conclusions of law"). See, also, Stone v. Davis (1981),66 Ohio St.2d 74, 84-85, citing In re Schoeppner (1976), 46 Ohio St.2d 21, 23 ("a trial court's ruling which recited various facts and a legal conclusion satisfied the requirements of Civ.R. 52, where, when considered together with other parts of the trial court's record, it formed an adequate base upon which to decide the narrow legal issue presented").
 {¶ 38} In a supplemental authority submission, appellant cites our case of In re Bell, 7th Dist. No. 04NO321, 2005-Ohio-6603, ¶ 55-56 for an example of an insufficient judgment entry. In that case, however, the trial court did not mention best interests and there was no indication that the court applied the correct test.
 {¶ 39} Here, the court made various relevant factual findings as we reviewed earlier. These articulated findings correspond to the applicable statutory best interest factors. Moreover, the court separately and specifically stated its legal conclusion that it was in the children's best interest to allocate parental rights and responsibilities to the mother. Thus, we conclude that the entry is sufficient for us to review.
 {¶ 40} Upon conducting that review, we have determined that there is competent, credible evidence to support the trial court's decision. The trial court had first-hand opportunity to listen to the versions of events and the witnesses' voice inflections and to view their corresponding demeanor and gestures. The trial court was best suited to contemplate the evidence and determine relevance, truth and weight. The court could believe that the mother only had the children sleep over her friend's house a few times rather than believe appellant's suspicion that they lived *Page 9 
there part-time. In fact, the court could find that such allegation is not the deciding factor appellant makes it. Additionally, the court could find credible the mother's claim that the father's visitation and relationship with his children is an important bond worth fostering rather than accepting his claim that the mother wishes to distance him from his children.
 {¶ 41} Finally, the children are very young. Their mother has been their primary care-giver since their birth. They have been living solely with their mother since March 2005 (the youngest child's entire life). The father lives out of state. His employment would require the use of daycare full-time (nearly ten hours a day at least five days a week). The father has no family nearby, whereas the children's current community is in a location where a great number of the mother's extended family are gathered. In fact, the children and their mother live with her grandparents.
 {¶ 42} Some rational fact-finder could have reasonably allocated the parental rights to the father as there is more than one reasonable view of the evidence. However, as the reviewing court, we cannot choose which view is best. Rather, we are merely concerned with whether the trial court's view of the evidence was reasonably articulated and supported by some competent and relevant evidence. Since it was, these assignments of error are overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 43} Appellant's second assignment of error contends:
 {¶ 44} "THE TRIAL COURT ERRED BY `PREDETERMINING' TO GRANT PLAINTIFF-APPELLEE, CUSTODY OF THE MINOR CHILDREN PRIOR TO THE FINAL HEARING ON THE MERITS — THUS, DENIED ME THE DEFENDANT-APPELLANT JUSTICE, CONTRARY TO THE `DUE PROCESS' CLAUSE OF THE BILL OF RIGHTS, OHIO'S CONSTITUTION, ARTICLE I (16)."
 {¶ 45} Here, the father alleges that the trial court had its mind made up before hearing the evidence at the divorce trial. In support of this claim, he cites to the December 20, 2005 notice, which set the trial date for February 1, 2006. He then points to the court's holding at the January 18, 2006 contempt hearing transcript, which was journalized on January 27, 2006. Here, the court modified the temporary order on visitation so that on January 21 and 28, the transfer of the children would take *Page 10 
place at the Sheriffs Department. The court then stated that on February 4 and until further notice of the court, the transfer point would be a gas station. Appellant interprets this ruling regarding a February 4 visitation (even though the final hearing was scheduled before such visit) as evidence of a preset decision on custody.
 {¶ 46} However, we cannot make this presumption. Merely because the final divorce trial was set for February 1 does not mean that the trial court could not ethically make temporary orders relevant to periods after the trial. Although the trial court ended up pronouncing a decision from the bench immediately after the trial, such was not a requirement. Courts often take such matters under advisement and announce the decision for the first time weeks later in a judgment entry. The trial court's mention of dates after the final hearing is construed as covering the bases in case the trial was continued or a decision could not be made right away. This assignment of error is overruled.
 {¶ 47} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 DeGenaro, P.J., and Donofrio, J., concurs. *Page 1