[Cite as *Gomez v. Gomez*, 2011-Ohio-2843.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DAGMAR GOMEZ, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 10-NO-375 |
| | ) | |
| JOHN PAUL GOMEZ, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas, Domestic Relations Division of
Noble County, Ohio
Case No. 205-0135

JUDGMENT:     Affirmed

APPEARANCES:
For Plaintiff-Appellee     Dagmar D. Gomez, pro-se
513 Spruce St.
Caldwell, Ohio 43724

For Defendant-Appellant     John P. Gomez, pro-se
1 Ridenour St.
Pittsburgh, PA 15205

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: June 9, 2011

DONOFRIO, J.

{¶1} Defendant-appellant, John Paul Gomez, appeals from a Noble County Common Pleas Court judgment denying his motion to reallocate parental rights and responsibilities to be designated the residential parent of the two children he shares with his ex-wife.

{¶2} Appellant and plaintiff-appellee, Dagmar Gomez, a.k.a. Dagmar Dyer, were divorced in February 2006. Appellee received custody of their two children who were both under three years old at the time.

{¶3} This case was first before this court on appeal from the divorce judgment that allocated parental rights and responsibilities to appellee after making a finding that it was in the children's best interests. *Gomez v. Gomez*, 7th Dist. No. 06-NO-330, 2007-Ohio-1559 (*Gomez 1*). We affirmed that decision.

{¶4} After we affirmed the divorce judgment, appellant filed a motion to reallocate parental rights and responsibilities based on appellee's failure to facilitate visitation, appellee's change of residence, and appellee's husband's negative involvement. The trial court commenced a hearing on appellant's motion on August 30, 2007. This hearing was then continued. On appellant's request, the judge later recused himself. A visiting judge reconvened the hearing on April 23, 2008.

{¶5} The trial court issued its decision denying appellant's motion to reallocate parental rights and responsibilities on September 10, 2008. It found that there had been no change in circumstances significant enough to warrant modification. Therefore, the court did not move on to consider the best interests of the children or whether the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to the children.

{¶6} This decision led to another appeal. *Gomez v. Gomez*, 7th Dist. No. 08-NO-356, 2009-Ohio-4809 (*Gomez 2*). Here we found that there was a sufficient change in circumstances to require the trial court to address the children's best interests. Consequently, we reversed that decision and remanded the case with orders for the court to continue applying the modification statute.

{¶7} On remand, the trial court held another hearing to determine the

children's best interests. Both parties appeared pro se. The hearing began on January 11, 2010. When appellant objected because he had not had an opportunity to review the guardian ad litem's report, the court continued the hearing in order to give appellant time to review the report and prepare to question the guardian ad litem (GAL). The hearing reconvened on April 16, 2010, again with both parties appearing pro se. Appellant called several witnesses and testified on his own behalf.

{¶8} The trial court noted that a change in circumstances had already been found. It then concluded that a change in custody was not in the children's best interests and the harm likely to be caused by a change of environment was not outweighed by the advantages of a change of environment. Consequently, the court denied appellant's motion to be designated the residential parent. It stated that appellant's visitation was to continue. Finally, the court noted, "[d]espite his problems, Appellant is a loving, caring parent and a shared parenting plan should be filed by the parties."

{¶9} Appellant filed a timely notice of appeal on July 7, 2010.

{¶10} Appellant raises a single assignment of error, which states:

{¶11} "THE TRIAL COURT ERRED IN RULING CONTRARY TO THE ORDERS SET FORTH ON REMAND IN GOMEZ V. GOMEZ, * * *; AS SUCH, ERRONEOUSLY ABUSED ITS DISCRETION UNREASONABLY, ARBITRARILY, AND UNCONSCIONABLY BY NOT APPLYING THE MODIFICATION STATUTE IN R.C. 3109.04 F BASED ON THE SUFFICIENT WEIGHT OF EVIDENCE ADDUCED DURING THE HEARINGS HELD ON AUGUST 30, 2007 AND APRIL 28, 2008. THUS, DECIDED TO HOLD NEW EVIDENTIARY HEARINGS TO APPOINT A GAL AND RETAIN PLAINTIFF-APPELLEE AS CUSTODIAL PARENT ADVERSE TO THIS COURT'S PRECEDENTIAL RULING ON SEPTEMBER 11, 2009."

{¶12} Appellant first spends a great deal of time rehashing events that occurred in 2006 and which were brought out at the August 2007 and April 2008 hearings, apparently in an attempt to show that the evidence demonstrated it was in the children's best interest to be placed with him.

{¶13} Appellant then goes on to argue that on remand, the trial court failed to obey the orders of this court. He goes through the R.C. 3109.04(F)(1) best interest factors and describes why they weigh in favor of granting custody to him. He argues that on remand the trial court, pursuant to this court's orders, should not have held another hearing to determine best interests but instead should have relied on the evidence presented at the August 30, 2007 and April 23, 2008 hearings and determined from this evidence that it was in the children's best interest to grant custody to him.

{¶14} We must first address appellant's argument that the trial court exceeded the scope of the remand. In *Gomez 2*, we ordered: "[T]he judgment of the trial court is hereby reversed, and this case is remanded for continued application of the modification statute." *Gomez 2*, at ¶34.

{¶15} If an appellate court remands a case for a limited purpose, the trial court must accept all issues previously adjudicated as finally settled. *Cugini & Capoccia Builders, Inc. v. Ciminello's, Inc.*, 10th Dist. No. 06AP-210, 2006-Ohio-5787, ¶ 32, citing *Blackwell v. Internatl. Union, U.A.W.* (1984), 21 Ohio App.3d 110, 112.

{¶16} In this case, we determined that a change in circumstances had occurred. Thus, the trial court was required to accept this issue as finally settled. The court expressed its acceptance at the beginning of the January 11, 2010 hearing:

{¶17} "I found that there was not a significant change of circumstances. The Appellate Court, however, indicated that I was in error; that there was a change of circumstances and that we should proceed to take a look at what is in the best interest of the child. So, that's the hearing that we are here for today." (Jan. 11, 2010 Tr. 5).

{¶18} Upon appellant's objection to the hearing, the court then responded:

{¶19} "Mr. Gomez, I'll be happy to use the information that is the transcript [from the August 30, 2007 and April 23, 2008 hearings] but I did not want to do that

without having a hearing and give you the opportunity to present anything else that you may want presented * * * in the interim period." (Jan. 11, 2010 Tr. 10).

**{¶20}** The court then acknowledged that it was going to consider all of the testimony and exhibits from the previous hearings in addition to anything else appellant wished to present in determining the best interests of the children. (Jan. 11, 2010 Tr. 10-11).

**{¶21}** Thus, the trial court was well aware of our prior decision and the remand order.

**{¶22}** Furthermore, the trial court did not exceed the scope of the remand. Appellate courts determine the appropriate scope of their remand orders. See *State ex rel. Mullins v. Curran*, 7th Dist. No. 10-MA-76, 2011-Ohio-1312, at ¶14, citing *State ex rel. Smith v. O'Connor* (1988), 71 Ohio St.3d 660 (the Ohio Supreme Court relies on an appellate court's interpretation of its own mandate); *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 5 ("[T]he rationale authorizing reviewing courts to order a limited remand implicitly recognizes the need for appellate courts to carefully exercise their discretion to determine the appropriate scope of remand.")

**{¶23}** Here we intended our remand order to include a further hearing given the nature of appellant's motion. Appellant moved for reallocation of parental rights and responsibilities in April 2007. The first two hearings on his motion were held in August 2007 and April 2008. We remanded the case in September 2009, for the court to continue applying the modification statute. The next step in the modification statute was to determine the children's best interests. R.C. 3109.04(E)(1)(a). The trial court held the next hearing in January 2010, and continued it to April 2010, at appellant's request. Over two years passed from the time of the first hearing until the case was remanded back to the trial court. In order to determine what was in the children's best interests the court needed some current evidence in addition to that evidence that was over two years old. Thus, the trial court did not exceed the scope of our remand when it held the January and April 2010 hearings.

{¶24} Next, we must move on to consider the merits of the trial court's decision.

{¶25} R.C. 3109.04 guides a trial court's discretion in a custody modification proceeding. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74. A trial court's decision regarding the custody of a child which is supported by competent and credible evidence will not be reversed absent an abuse of discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, syllabus; *Rohrbaugh v. Rohrbaugh* (2000), 136 Ohio App.3d 599, 603. A trial court has broad discretionary powers in child custody proceedings. *Reynolds v. Goll* (1996), 75 Ohio St.3d 121, 124. This discretion should be accorded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved. *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13. An abuse of discretion connotes an attitude on the part of the court that is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶26} R.C. 3109.04(E)(1)(a) provides:

{¶27} "(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

{¶28} "* * *

{¶29} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶30} In *Gomez 2*, we already determined that a change in circumstances occurred in this case. Thus, we need not readdress that prong of the R.C.

3109.04(E)(1)(a) test.

**{¶31}** Instead, we must consider whether modification is necessary to serve the best interests of the children and, if so, whether the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the children.

**{¶32}** In determining the best interests of the children, a court is to consider all relevant factors, including, but not limited to:

**{¶33}** "(a) The wishes of the child's parents regarding the child's care;

**{¶34}** "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

**{¶35}** "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

**{¶36}** "(d) The child's adjustment to the child's home, school, and community;

**{¶37}** "(e) The mental and physical health of all persons involved in the situation;

**{¶38}** "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

**{¶39}** "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

**{¶40}** "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child [or certain other offenses involving children or domestic violence];

**{¶41}** "(i) Whether the residential parent * * * has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

**{¶42}** "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1).

**{¶43}** The trial court made detailed findings as to the applicable best interest factors as follow.

**{¶44}** Appellant alleged abuse of the children and he submitted the affidavit of a Pennsylvania physician who found reasonable cause to believe that abuse had occurred. The matter was referred to the Noble County Department of Job and Family Services (NCDJFS), who investigated the accusations and found them to be unsubstantiated. Appellant testified and offered numerous photographs showing that the children enjoyed being with him, that his residence is suitable, and that they enjoy a good relationship with his fiancée. Appellant recently learned that he has a seven-year-old daughter who lives in Florida and is in the process of developing a relationship with her. Appellant has a strained relationship with appellee's new husband, Tim Dyer. Hostilities continue between appellant, appellee, and Dyer and while Dyer is a major source of the hostility, appellant's overall attitude exacerbates the problem. Appellant's psychological evaluation was insufficient to draw conclusions about mental health issues, although appellant has anger management problems. Appellant is current in his child support, resides in an adequate although one bedroom home, and is willing to find larger quarters if he is awarded custody. The children are well adjusted in their current residence.

**{¶45}** The court further found that appellant was not forthcoming in providing information to the GAL, was disrespectful toward the GAL, and accused her of having predetermined the outcome of her report and having been coached by the court. The GAL indicated that the children are well adjusted, happy children who get along well with their younger sibling and have friends through school. The GAL also found a lack of cooperation and communication between the parties. And she found that appellant was controlling, demanding, and exhibited behavior problems when she failed to respond as he wished. The GAL recommended that the children remain in appellee's custody and that designating appellant as the residential parent would not

be in their best interest.

{¶46} The court went on to find that throughout the hearings, appellant was disrespectful to the court, the court personnel, and witnesses. Appellant was found in direct contempt during the April 2010 hearing and placed in the sheriff's custody until he apologized. Appellant apologized 15 minutes later and was released from custody.

{¶47} The trial court then concluded that a change in custody was not in the children's best interests.

{¶48} The trial court did not abuse its discretion in reaching this decision. The evidence revealed the following.

{¶49} Regarding the allegations of abuse, two separate accusations were made concerning the parties' daughter.

{¶50} First, appellant made an allegation in 2006 that the children were mimicking sexual acts. Kelly Clark, a caseworker at NCDJFS, testified that she was ordered by the trial court to complete an assessment of the children's residential home. (Aug. 30, 2007 Tr. 89-90). As part of this 30-day assessment, Clark went to appellee's home two or three times. (Aug. 30, 2007 Tr. 95-96). During the assessment, Clark stated allegations were made against appellant that he sexually abused his daughter. (Aug. 30, 2007 Tr. 90). Clark stated that she concluded that the allegations of sexual abuse were unsubstantiated. (Aug. 30, 2007 Tr. 91).

{¶51} Jennifer Schilken, a children's services caseworker in Pennsylvania, testified that she received a referral from NCDJFS to interview appellant and his daughter regarding allegations that he sexually abused her. (Aug. 30, 2007 Tr. 70). Schilken stated that she completed the requested interviews of the matter. She stated that during the interview, the daughter told her that Dyer was the one who had sexually abused her. (Aug. 30, 2007 Tr. 72). However, she stated that the daughter was very young and inconsistent in her statements. (Aug. 30, 2007 Tr. 73). Appellant then presented a letter from NCDJFS stating that the allegations of sexual abuse against him were unsubstantiated and the case was closed. (Aug. 30, 2007

Ex. 19). Clark also testified that the allegations were unsubstantiated. (Aug. 30, 2007 Tr. 93).

**{¶52}** Second, in July 2007, appellant raised allegations that Dyer had hit his daughter on the back with a belt. He testified that he saw belt prints on her back so he took her to the emergency room. (Apr. 23, 2008 Tr. 87). Appellant stated that the doctor who examined his daughter reported suspected abuse to the sheriff's department and NCDJFS. (Apr. 23, 2008 Tr. 88).

**{¶53}** As to the alleged abuse, appellee testified that the parties' daughter had always lived with her and she was unaware of any type of abuse directed at her daughter. (Apr. 23, 2008 Tr. 122-23).

**{¶54}** Schilken testified that she once again interviewed the daughter and the daughter stated that Dyer beat her. (Aug. 30, 2007 Tr. 81).

**{¶55}** Clark testified that she saw the injuries to the daughter's back. (Aug. 30, 2007 Tr. 98). And she testified that she interviewed the daughter who stated that Dyer hit her with a belt. (Aug. 30, 2007 Tr. 104). Clark further stated, however, that the daughter changed her story several times and Clark determined her not to be a reliable source of information. (Aug. 30, 2007 Tr. 104-105). Clark stated that this case was closed because NCDJFS was not able to gather enough evidence to substantiate physical abuse. (Aug. 30, 2007 Tr. 99).

**{¶56}** Mindy Harding, another NCDJFS employee, testified that NCDJFS received a faxed affidavit from a Pennsylvania doctor indicating that the parties' daughter was abused. (Apr. 23, 2008 Tr. 22). Harding stated that NCDJFS had conversations with law enforcement regarding the accusation. (Apr. 23, 2008 Tr. 22-23).

**{¶57}** And Christine Shoepner, another NCDJFS employee, also investigated the allegation. Shoepner testified that she went to appellee's house with law enforcement and also went several times on her own. (Apr. 16, 2010 Tr. 14). She stated that she talked to the children, observed the home, and talked to the family. (Apr. 16, 2010 Tr. 15). She testified that while the daughter initially stated that Dyer

caused the injury to her back, she also told Shoepner numerous times that he did not abuse her. (Apr. 16, 2010 Tr. 12, 25). Shoepner also acknowledged receiving an affidavit from a Dr. Misja from Pennsylvania who averred that after examining the parties' daughter he had reasonable cause to believe that she had been abused. (Apr. 16, 2010 Tr. 18; Ex. 97). Shoepner opined that the daughter appeared to be free from any physical injuries at any given time, that there was no indication that she was fearful of her mother, father, or stepfather, and that both she and her brother were happy children. (Apr. 16, 2010 Tr. 28).

{¶58} As part of her investigation, Schilken visited appellant's home and found it to be clean and appropriate with plenty of food and clothes and toys for the children. (Aug. 30, 2007 Tr. 82). She also testified that both children appeared happy at appellant's home. (Aug. 30, 2007 Tr. 83). At the time of the January 2010, hearing, appellant lived in a one-bedroom apartment. (Jan. 11, 2010 Tr. 84). But by the time of the April 2010 hearing, appellant had moved into a five-bedroom house. (Apr. 16, 2010 Tr. 36).

{¶59} Bridgeport Police Sergeant Mike Hendershott testified that on one occasion Dyer came to the police station to report that appellant had assaulted him by slapping the glasses off of his face. (Apr. 23, 2008 Tr. 46-47). The alleged assault occurred during a visitation exchange. (Apr. 23, 2008 Tr. 47).

{¶60} Appellant testified that appellee denies him telephone contact with their daughter. (Apr. 23, 2008 Tr. 84). He further stated that when he calls, Dyer gets on the phone and calls him names. (Apr. 23, 2008 Tr. 85). And he stated that appellee makes it difficult for him to exercise visitation. (Apr. 23, 2008 Tr. 84). Appellant additionally testified that when appellee moved with the children from her grandparents' house to Dyer's house, she did not inform him. (Apr. 23, 2008 Tr. 86).

{¶61} Appellee testified that after the divorce, she and the children moved from her grandparents' house to live with Dyer. (Apr. 23, 2008 Tr. 62). She also admitted she was found in contempt for violating the visitation order. (Apr. 23, 2008 Tr. 126). As a result, the court ordered her to serve 30 days in jail with the

opportunity to purge by abiding by the standard order of visitation for one full year and permitting and aiding telephone contact between appellant and their daughter. (Apr. 23, 2008 Tr. 126-27). Appellee testified that she complied with the purge conditions and never went to jail. (Apr. 23, 2008 Tr. 127). She stated that for the past two years since the contempt finding, she had complied with all court orders. (Apr. 23, 2008 Tr. 128). Appellee testified that she facilitates phone contact between appellant and their daughter even when appellant calls past his scheduled time. (Apr. 23, 2008 Tr. 129-30).

{¶62} Appellee also testified as to appellant's visitation. She stated that at that time, appellant was to have visitation at a local agency from 4:00 p.m. to 6:00 p.m. on Mondays. (Apr. 23, 2008 Tr. 131). She stated he had failed to attend these visits. (Apr. 23, 2008 Tr. 131). Additionally, she testified that in the fall of 2007 and winter of 2008, appellant's visits were sporadic and that he would say he had car trouble or could not get off from work. (Apr. 23, 2008 Tr. 132). Often times, she stated, appellant would simply not show up at the exchange location where he was to pick up the children for weekend visitation. (Apr. 23, 2008 Tr. 135). Appellee stated that the parties were to exchange the children in Bridgeport, which was an hour-and-a-half from her home. (Apr. 23, 2008 Tr. 134). She testified that when appellant did not call, she and the children would wait awhile for him and then turn around and drive the hour-and-a-half back home. (Apr. 23, 2008 Tr. 135-36).

{¶63} As to appellant's phone calls with the children, appellee testified that sometimes the phone calls are very short. (Apr. 23, 2008 Tr. 68).

{¶64} Appellant testified that he has never missed a child support payment, that he provides medical insurance for the children, and that he purchases clothing for the children. (Apr. 23, 2008 Tr. 96). Appellee agreed that appellant paid his child support. (Jan. 11, 2010 Tr. 36-37).

{¶65} Appellant testified that he currently does not work, but attends school in the evenings. (Jan. 11, 2010 Tr. 88). He stated that if he was granted custody of the children, he had friends who would babysit while he was at school. (Jan. 11, 2010

Tr. 88-89).

**{¶66}** Appellant submitted numerous photographs that show the children with him engaging in everyday activities and appearing happy. (Apr. 16, 2010 Exs. 1-93).

**{¶67}** Appellant further testified that he recently learned he has a seven-year-old daughter who lives in Florida with her mother. (Jan. 11, 2010 Tr. 89). He later testified that he reconnected with the child's mother and they planned to marry in May at which time she would move in with him. (Apr. 16, 2010 Tr. 36).

**{¶68}** Amy Graham, the GAL, recommended that it was in the children's best interests to remain in appellee's residence. (Apr. 16, 2010 Tr. 96). She further opined that the children were happy, accelerating at school, and were in a stable environment. (Apr. 16, 2010 Tr. 97). As to the parties, Graham opined they should both attend anger management counseling. (Apr. 16, 2010 Tr. 97). Additionally, Graham stated the children have a young sibling at appellee's house to whom they are very much attached. (Apr. 16, 2010 Tr. 105). She also testified that while she did not visit appellant's home because of the distance, she requested pictures from him and tried to arrange a visit to see his interaction with the children but he was uncooperative. (Apr. 16, 2010 Tr. 99-101).

**{¶69}** Applying this evidence to the best interest factors reveals the following.

**{¶70}** Both parents wished to have custody of the children. R.C. 3109.04(F)(1)(a).

**{¶71}** The children's wishes and concerns were not expressed to the court, presumably due to their young age. R.C. 3109.04(F)(1)(b).

**{¶72}** The children appear to have a good relationship with both of their parents. R.C. 3109.04(F)(1)(c). The GAL reported that the children were happy and well-adjusted in their home with their mother. And appellant's testimony and photographs showed that the children appear happy and at home when visiting with him. Additionally, the GAL found that the children have a younger sibling at appellee's house (appellee's and Dyer's child) to whom they are very much attached.

**{¶73}** As reported by the GAL, the children are well-adjusted at home and at

school where they have many friends. R.C. 3109.04(F)(1)(d).

{¶74} No testimony was presented to indicate that the parties are in anything but good overall health. There was some mention of mental evaluations for both parties, but it does not seem that any mental issues were brought to light for either party. The only possible issue here was anger management problems for both parties. R.C. 3109.04(F)(1)(e).

{¶75} The testimony was conflicting as to which parent was more likely to honor and facilitate visitation. R.C. 3109.04(F)(1)(f). Appellant testified that appellee and Dyer made telephone contact with his daughter difficult. Appellee, however, indicated that she allowed their daughter to talk with appellant even when he does not call at his scheduled time. Appellant further testified that appellee did not cooperate with visitation. This fact was substantiated as it applied in 2006, because the trial court found appellee in contempt for failing to abide by the visitation schedule. R.C. 3109.04(F)(1)(i). However, after the contempt finding, appellee has complied. The court's purge condition was for appellee to comply with the visitation schedule for one year. And she never had to serve her 30-day sentence because she complied with visitation. Additionally, appellee testified that appellant has failed to attend numerous visitations with the children, sometimes causing her to drive an hour-and-a-half to the meeting place just to turn around and drive back home with the children when appellant does not show up.

{¶76} The evidence showed that appellant is current in his child support. R.C. 3109.04(F)(1)(g).

{¶77} There was no evidence that either party or member of their household has ever been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child or domestic violence. R.C. 3109.04(F)(1)(h). However, as the evidence detailed, allegations were made against both appellant and Dyer regarding abuse. All allegations were unsubstantiated and NCDJFS closed the cases after thorough investigations.

{¶78} Finally, appellant has established a residence in Pennsylvania. R.C.

3109.04(F)(1)(j). The trial court found that he was residing in a one-bedroom apartment. But although that was the case at the January 2010 hearing, by the time of the April 2010 hearing, appellant was residing in a five-bedroom house with his fiancée.

{¶79} Given the evidence and the best interest factors, we cannot conclude that the trial court abused its discretion in finding that it was in the children's best interest to remain in appellee's custody. Many of the factors weigh evenly as to both parties. And while the parties may each have their flaws, both can provide adequate, loving homes for the children. When reviewing a case under the abuse of discretion standard of review, even if this court may have reached a different conclusion, we are required to defer to the trial court's judgment unless it was arbitrary, unreasonable, or unconscionable. Based on this court's standard of review and because the trial court's decision was based on competent, credible evidence, we have no choice but to affirm it.

{¶80} Accordingly, appellant's sole assignment of error is without merit.

{¶81} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P.J., concurs.

DeGenaro, J., concurs.