[Cite as *Mummey v. Mummey*, 2010-Ohio-4243.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DARRELL MUMMEY, | ) | |
| | ) | CASE NO.   10 NO 371 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| HEATHER MUMMEY, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
                                   Case No. 209-0052.


JUDGMENT:                          Affirmed.


APPEARANCES:
For Plaintiff-Appellant:           Attorney Jacqueline Tresl
                                   1500 Cowden Road
                                   New Concord, Ohio  43762


For Defendant-Appellee:            Attorney Andrew Warhola
                                   110 North 7th Street
                                   Cambridge, Ohio  43725


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                   Dated:  September 7, 2010

VUKOVICH, P.J.

**¶{1}**   Plaintiff-appellant Darrell Mummey appeals the decision of the Noble County Common Pleas Court, which awarded him visitation with his child and allocated parental rights to defendant-appellee Heather Mummey.   Mr. Mummey contends that the trial court abused its discretion in failing to order shared parenting as he requested.   As the trial court's decision was not unreasonable, arbitrary, or unconscionable, the judgment in this case is hereby affirmed.

<u>STATEMENT OF THE CASE</u>

**¶{2}**   The parties were married in September of 2005, and a child was born in November of 2006.   In February of 2009, the mother and child moved out of the marital residence and moved in with the mother's parents.   The father filed a complaint for divorce and sought shared parenting.   A hearing on temporary orders was held, and on April 9, 2009, the court ordered equal amounts of parenting time.

**¶{3}**   The final divorce hearing was held on November 23, 2009.   Certain features of the father's proposed shared parenting plan were outlined.   For instance, his plan called for forty-eight hours notice before leaving the *county* with the child.   It also required a parent traveling out of state to obtain express written consent from the other parent.   Furthermore, his plan sought parental consultation before emergency medical care and agreement of both parties for non-emergency care.

**¶{4}**   The father testified that his schedule was about to change from five eight-hour days to four ten-hour days.   (Tr. 33).   He stated that both parties equally performed caregiving functions for the child while they lived together.   (Tr. 25).   Testimony established that the mother worked full-time as well, but she had more flexibility in her schedule.   It was pointed out that although the father had weekends off, he resisted spending his temporary shared parenting time on weekends.

**¶{5}**   The mother testified that she had always been the child's primary caregiver.   (Tr. 75).   She pointed out that she ensured the child had what she needed, and she attended every doctor visit and hair appointment whereas the father attended only one visit.   (Tr. 75-77).   The mother expressed concern about the safety of the father's firearm.   She noted that they could not agree on basic decisions and opined

that shared parenting did not seem to be working well because the child still cried every time she left the mother. (Tr. 80, 92). The mother also said that she is adept at encouraging a loving relationship between the child and the father. (Tr. 80).

¶{6} After the hearing, the parties were ordered to submit proposed findings of fact and conclusions of law. On January 27, 2010, the court issued a judgment entry adopting and incorporating by reference the mother's proposed findings and conclusions. The court named the mother the residential parent and ordered standard visitation for the father. The father filed a timely appeal.

<u>ASSIGNMENT OF ERROR</u>

¶{7} The father's sole assignment of error provides:

¶{8} "THE COURT ERRED AND ABUSED ITS DISCRETION WHEN IT SAID THAT THE REASON IT WAS REFUSING TO ORDER SHARED PARENTING WAS THAT THE COURT DOES NOT ORDER SHARED PARENTING UNLESS THE PARENTS CAN GET ALONG AND MAKE DECISIONS TOGETHER."

¶{9} A trial court's decision regarding child custody is reviewed for an abuse of discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23. An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. It is the province of the trial court to resolve disputed facts and to make credibility determinations. *Bechtol*, 49 Ohio St. 3d at 23. This principle is said to be even more important in child custody cases, where much can be read from a party's demeanor and attitude. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 419.

¶{10} Regarding shared parenting, a court shall primarily allocate parental rights and responsibilities over a child to one of the parents even if one parent submitted a shared parenting plan where that plan is not in the child's best interests. R.C. 3109.04(B)(1). The consideration of the child's best interest is mandatory and paramount. R.C. 3109.04(B)(1), (F)(1).

¶{11} In making a best interest determination, the court shall consider all relevant factors including but not limited to: (a) the parents' wishes; (b) the child's wishes; (c) the child's relationship with the parents and any person who may significantly affect the child's best interest; (d) the child's adjustment to the home,

school, and community; (e) the mental and physical health of all persons involved; (f) the parent more likely to facilitate the court's orders; (g) the existence of any child support arrearage; (h) certain criminal acts of the parents; (i) whether a parent has continuously and willfully denied the other parent's right to court ordered parenting time; and (j) whether either parent has established a residence, or is planning to establish a residence, outside the state. R.C. 3109.04(F)(1).

¶{12} There are also separate factors for determining whether shared parenting is in the best interest of the children, including, but not limited to: (a) the ability of the parents to cooperate and make decisions jointly with respect to the children; (b) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (c) any history of or potential for domestic violence or kidnapping; (d) the geographic proximity of the parents to each other as related to the practical considerations of shared parenting; and (e) any recommendation of the guardian ad litem. R.C. 3109.04(F)(2).

¶{13} The lists are not exclusive, and no one factor is dispositive. *Nentwick v. Nentwick* (Feb. 18, 1998), 7th Dist. No. 96JE27. A court should also give due consideration to which party has been the primary caregiver and the age of the child. *Bechtol*, 49 Ohio St.3d at 23.

¶{14} Appellant raises various areas of concern here. First, appellant takes issue with a statement the court made on the record at the final divorce trial. Among many other statements, the court opined that shared parenting does not work if the parties cannot get along and suggested that the parties' particular situation called for an agreed plan before the court would implement shared parenting. (Tr. 109).

¶{15} Initially, we point out that the ability of the parents to cooperate and make decisions jointly is a specific statutory factor that must be considered when determining whether to order shared parenting. R.C. 3109.04(F)(2). Moreover, when read in context, the statement represents merely one among many detailing the court's reasoning for its anticipated ruling. Regardless, the court's oral pronouncements are not part of its judgment. *Schenly v. Kauth* (1953), 160 Ohio St. 109, syllabus ¶1. "A reviewing court is loath to address substantive or procedural content of a courtroom

colloquy where it is then omitted from the written judgment." *Stern v. Stern*, 7th Dist. No. 02-JE-17, 2003-Ohio-3293, ¶29.

**¶{16}** Appellant then complains that the court adopted and incorporated by reference the mother's proposed findings of fact and conclusions of law rather than drafting its own entry. However, there is nothing that per se prohibits a court from adopting a party's findings and conclusions as its own. See, e.g., *John Fithian Contracting Co. v City of Salem*, 7th Dist. No. 07CO33, 2008-Ohio-5055, ¶16 (where the trial court incorporated by reference a trial brief); *Janosek v. Janosek*, 8th Dist. Nos. 86771, 86777, 2007-Ohio-68. *Adkins v. Adkins* (1988), 43 Ohio App.3d 95, 98. If the findings and conclusions are valid, the court can utilize them as its own. See id.

**¶{17}** Next, appellant states that the temporary order of shared parenting was working and that nothing had changed from the time the temporary order was entered. Pursuant to Civ.R. 75(N)(1), the court may make a temporary order regarding the allocation of parental rights and responsibilities during the pendency of an action for divorce. When the court later fashions a custody order in finally resolving the divorce, the court is not modifying a prior final custody decree; rather, it is entering a custody order for the first time. *State ex rel. Thompson v. Spon* (1998), 83 Ohio St.3d at 554-555; *Garnet v. Garnet* (Mar. 2, 1981), 7th Dist. No. 80CA31. The changed circumstances test in R.C. 3109.04(E) only applies when modifying custody after the final allocation, and it does not apply merely because temporary orders had been issued*. Schmidli v. Schmidli*, 7th Dist. No. 02BE63, 2003-Ohio-3274, ¶21.

**¶{18}** We also note that transitional stages of separation often call for shared parenting pending the final divorce to avoid stress to a child. Once the child is accustomed to the parents' separation, a court may find it more stressful to a young child to change custody as often is called for in an equal shared parenting plan. Here, the child had only just turned three at the time of the divorce trial. It should also be pointed out that the father's new work schedule would result in him having to be at work at 6:00 a.m. four days per week, which would require an adjustment in the child's wake-up time. These are factors that can be considered under R.C. 3109.04(F) as this statute states, "including, but not limited to" when listing the statutory

considerations. This leads to our discussion of the statutorily-listed best interest factors.

¶{19} The mother wished to be the sole residential parent, and the father wished to have equal shared parenting. See R.C. 3901.04(F)(1)(a). The court found the child was too young to be interviewed. See R.C. 3901.04(F)(1)(b). The court found that the father was not in arrears, no party had been convicted of a relevant criminal offense, neither parent deprived the other of parenting time, and neither parent was planning to establish a residence out of state. See R.C. 3901.04(F)(1)(e), (h), (i), and (j).

¶{20} Testimony established that the child interacts well with both parents, that the maternal grandmother, with whom the mother lives, was once her babysitter, and that both maternal grandparents provide support to the child. See R.C. 3901.04(F)(1(c). The court found that the mother was the child's primary caregiver. See id. The mother stated that the child cries when the mother brings her to stay with the father, but she has never seen the child cry when the father brings the child back to the mother. See R.C. 3901.04(F)(1)(d).

¶{21} The court also found that the mother was more likely to honor and facilitate parenting time and visitation. See R.C. 3109.04(F)(1)(f). In fact, the mother testified that she was very encouraging of the child's love for her father. See R.C. 3109.04(F)(2)(b). The father did not satisfy the court that he could do likewise. In opining that shared parenting would not be in the child's best interests, the court stated that the father's attitude of inflexibility and unwillingness to work out parenting time unless it is in writing impaired the parties' ability to cooperate and make joint decisions. See R.C. 3109.04(F)(2)(a).

¶{22} As the court pointed out, the father's plan had what the court found to be unreasonable requirements such as forty-eight hour notice to leave the county, written permission to leave the state, consultation before emergency care, and agreement before non-emergency care. Contrary to the father's suggestion, he did not agree to withdraw all of these terms during his testimony. In fact, he maintained at trial that each party must attempt to obtain written permission from the other to leave the state

for a day or for a vacation, which permission could be denied. (Tr. 47). He also maintained the propriety of his plan's medical terms. (Tr. 48).

¶{23} The weighing of all these factors is the discretionary function of the trial court, and we do not substitute our judgment for that of the trial court where there is more than one reasonable view of the evidence. See *Gomez v. Gomez*, 7th Dist. No. 06NO33, 2007-Ohio-1559, ¶32, 42. Although a rational fact-finder could have reasonably implemented shared parenting after making amendments to the unreasonable portions of the father's plan pursuant to R.C. 3109.04(D)(1)(a), such a result was not required. The trial court occupied the best position to judge the credibility of the mother and the father. See *Davis*, 77 Ohio St.3d at 419; *Bechtol*, 49 Ohio St. 3d at 23. The court viewed their demeanor, voice inflections, gestures, eye movements and was best suited to make decisions regarding their sincerity as to their role in the child's life and their ability to cooperate jointly. There is competent and credible evidence to support the court's decision. As such, this assignment of error is overruled.

¶{24} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.