[Cite as *Ingram v. Ingram*, 2012-Ohio-2587.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

TERRY D. INGRAM,                        )
                                        )       CASE NO. 11 NO 385
        PLAINTIFF-APPELLEE,             )
                                        )
        - VS -                          )       OPINION
                                        )
KITTI J. INGRAM,                        )
                                        )
        DEFENDANT-APPELLANT.            )


CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas
                                 Court, Case No. 210-0022.


JUDGMENT:                        Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellee:          No Brief Filed.


For Defendant-Appellant:         Attorney Stephanie L. Mitchell
                                 Attorney Margaret Boyd Laplante
                                 Tribbie, Scott, Plummer & Padden
                                 139 West 8th Street
                                 P.O. Box 640
                                 Cambridge, OH  43725


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                                 Dated:  June 6, 2012


DeGenaro, J.

{¶1} Defendant-Appellant, Kitti J. Ingram, appeals the May 11, 2011 judgment of the Noble County Court of Common Pleas granting a divorce between her and Plaintiff-Appellee, Terry D. Ingram. On appeal, Kitti contends that the trial court's decision to designate Terry the sole legal custodian and residential parent of the parties' teenage son Christopher was an abuse of discretion. Kitti's argument is meritorious. There was insufficient evidence presented upon which the trial court could determine an original allocation of parental rights and responsibilities. Accordingly, the judgment of the trial court is reversed and remanded to the trial court for an evidentiary hearing on the issue of parental rights and responsibilities of the parties' minor child, Christopher.

## Facts and Procedural History

{¶2} Kitti and Terry were married on September 3, 1989. On February 8, 2010, Terry filed a complaint for divorce. Kitti answered, and the parties submitted affidavits of expenses, income and other financial disclosures. Terry was employed as a material handler at Detroit Diesel, earning approximately $32,000 per year. Kitti was unemployed, having been a homemaker for the duration of the marriage. Three children were born as issue of the marriage. At the time of the divorce, all except Christopher, who was born June 25, 1997, had emancipated. While the divorce action was pending, an agreed temporary order was issued granting temporary custody of Christopher to Kitti, granting Terry parenting time pursuant to the court's standard visitation order, and ordering Terry to pay $322.34 per month, plus processing fee, as child support to Kitti. Kitti was granted exclusive occupancy of the marital residence during the pendency of the proceedings.

{¶3} The case proceeded to a final divorce hearing on November 10, 2010, the main point of contention being the disposition of the marital residence. Terry asserted he should be awarded the home, along with the accompanying mortgage debt, because he was actively involved in the constructing of the home and landscaping of the premises. Terry presented little evidence regarding the issue of custody, except to state that he believed Christopher would want to remain in the marital home. Terry testified that he worked second-shift and therefore was only able to visit with Christopher on weekends since the parties had separated.

{¶4} By contrast, Kitti testified that she wanted to be Christopher's legal custodian and residential parent. Throughout the marriage Kitti had stayed at home to care for Christopher, along with his older sister Sarah, who, although an adult at the time of the divorce, has special needs.

{¶5} Only Kitti and Terry testified at the final hearing. No in camera interview of the minor child was conducted, and in fact, neither party had requested one. At the close of the hearing, the trial court asked the parties to submit their respective positions in writing, instructing them to be specific regarding requests for property division. The court continued: "I don't think there's any real controversy about custody. It appears that Mrs. Ingram will be the residential parent of the child. Do me [sic] a child support computation on what you guys consider to be the new numbers."

{¶6} Terry filed proposed findings of fact and conclusions of law on December 29, 2010. Kitti filed a document entitled "Defendant Kitti Jo Ingram's Property Division Request" on January 3, 2011.

{¶7} On March 29, 2011, Terry's counsel sent an ex parte letter to the court, complaining that Kitti was permitting the marital residence to go into foreclosure, and requesting that the court quickly issue the final decree.

{¶8} On May 11, 2011 the trial court issued the final divorce decree, adopting Terry's proposed finding of fact and conclusions of law in their entirety. Among other things, the court awarded the marital residence to Terry and designated Terry as the legal custodian and residential parent of Christopher. No child support was ordered.

{¶9} Kitti filed a timely notice of appeal from the decree. The trial court granted her motion for stay. Therein, the court ordered that Kitti be named the legal custodian and residential parent of Christopher pursuant to the terms of the court's earlier temporary order, and that Terry be ordered to resume paying child support in the amount of $322.34 per month.

### Allocation of Parental Rights and Responsibilities

{¶10} In her sole assignment of error, Kitti asserts:

{¶11} "The trial court erred and abused its discretion when it named Appellee the

primary residential parent and legal custodian of the minor child, Christopher Wayne Ingram (DOB: 6/25/1997) where no request for such an order was made by Appellee at hearing and where no evidence was presented establishing that such an order would be in the best interests of said minor child."

{¶12} In a divorce action, the court must allocate parental rights and responsibilities in accordance with the child's best interests. R.C. 3109.04(A), (B)(1). To determine the best interests of the child, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers * * * the wishes and concerns of the child, as expressed to the court;

(c) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has [involving certain offenses or adjudications relative to the child or family];

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other

parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state. R.C. 3109.04(F)(1).

**{¶13}** A decision regarding the custody of a child shall not be reversed absent an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 416-417, 674 N.E.2d 1159 (1997). In order to find an abuse of discretion, the reviewing court must conclude that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). "If the trial court's decision concerning the child's best interests is not supported by competent, credible evidence, then it is unreasonable and may be reversed." *Gomez v. Gomez*, 7th Dist. No. 06 NO 330, 2007-Ohio-1559, ¶ 30, citing *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

**{¶14}** Kitti's contention that Terry did not request custody of Christopher is not entirely accurate. In his complaint, Terry requested that he "be named the legal and residential parent of the minor child." During opening statements, Terry's counsel stated the following with regard to custody: "Mr. Ingram has been able to visit with his son on a regular basis. He realizes that if he is awarded the house, the son may want to live there. So, we are not here to get into a big custody fight but that's the reality." Thus, Terry made some request for custody of Christopher.

**{¶15}** Kitti also takes issue with the fact that the trial court adopted Terry's proposed findings of fact and conclusions of law verbatim. While "there is nothing that per se prohibits a court from adopting a party's findings and conclusions as its own," those findings and conclusions *must be valid*. (Internal citations omitted, emphasis added.) *Mummey v. Mummey*, 7th Dist. No. 10 NO 371, 2010-Ohio-4243, ¶ 16. In this case, however, their validity appears questionable.

**{¶16}** The decree states as follows with regard to custody:

With regard to the allocation of parental rights and responsibilities for the care of the minor child, the court has considered all of the factors

contained in Revised Code Section 3109.04(F)(1) and in determining the best interest of the minor child and makes the findings:

(a) Both parties requested the court designate them as the residential parent and legal custodian of the minor child. The child currently resides with his mother. Plaintiff believes the child will want to stay at the family residence with the parent who owns the property. In the alternative, if Plaintiff does not receive custody of the child, he has requested liberal and frequent contact with the child.

(b) The court did not interview the child regarding his wishes and concerns as to the allocation of parental rights and responsibilities.

(c) The Court finds that child has good interaction with and interrelationship with his parents and other persons who significantly affect the child's best interest.

(d) The child has adjusted well to home, school, and community.

(e) The child does not suffer any significant mental or physical health problems.

(f) Both parties will honor and facilitate court approved parenting time rights or visitation and companionship rights with the child.

(g) Plaintiff is current on his child support payments for the child. Plaintiff has also paid additional necessary expenses for the child.

{¶17} The court designated Terry as the residential parent and legal custodian of Christopher, concluding that "Plaintiff [Terry] is a fit and proper person to be the legal custodian and residential parent of this child and this is in the best interest of the minor child." The court ordered a deviation to $0 per month in child support due to Kitti's financial situation.

**{¶18}** Kitti correctly notes that Terry presented no evidence in support of his custody request other than his own testimony that he believed Christopher would want to remain with the marital residence. The entirety of Terry's testimony regarding custody is as follows.

Q. Okay. Now with regard to your son Christopher how often are you able to see him now?

A. Every other week-end [sic]

Q. Okay. And you work second shift right?

A. I work second shift, so I don't get to see him during the week.

Q. Okay. Have there been any serious problems with regard to your ability to see Christopher while this case was going on?

A. No.

Q. Okay. Do you and Kitti talk at all?

A. Very seldom.

Q. Okay, ever talk about Christopher?

A. No so far we haven't needed to.

Q. Okay. Alright. Is it your understanding or is it your belief that your son would probably want to remain in the residence?

A. My son will stay with the house.

Q. Okay.

A. That's his comfort zone.

Q. You're not trying to take him away from his mother or anything like that right? You just know that's where he wants to be?

A. That's where he wants to be.

**{¶19}** However, the evidence put into the record by Kitti is similarly scant. Kitti testified that she was a homemaker for the duration of the marriage and she cared for the children while Terry worked and she continued to care for the parties' adult daughter with special needs. While there was some testimony that Kitti left the parties' residence for

periods of time during the marriage, sometimes to care for aging relatives, she always took Christopher with her and there was no evidence that this was problematic for the child. After Terry filed for divorce, Christopher remained with Kitti. Kitti also testified that Terry had a history of anger problems, and had caused damage to the inside of their home, for example, breaking a door off of its hinges and throwing objects at the kitchen cupboard door.

**{¶20}** The trial court decided to award custody to Terry based solely upon its disposition of the marital residence to Terry, which is unreasonable and arbitrary. The trial court's custody determination was erroneous as there was insufficient evidence presented upon which an original allocation of parental rights and responsibilites could be made. Additionally, the trial court's custody determination is puzzling given that, at the end of the hearing, the trial court stated that he did not think there was "any real controversy about custody," and that it appeared "Mrs. Ingram will be the residential parent of the child."

**{¶21}** Kitti's sole assignment of error is meritorious. Accordingly, the judgment of the trial court is reversed and remanded to the trial court for an evidentiary hearing on the issue of parental rights and responsibilities of the parties' minor child, Christopher.

Donofrio, J., concurs.

Vukovich, J., concurs.