[Cite as *Robinette v. Bryant*, 2013-Ohio-2889.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

MICHAEL DAVID ROBINETTE,      :      Case No. 12CA20

     : 

     Plaintiff-Appellee,      : 

     :      <u>DECISION AND</u>

     v.      :      <u>JUDGMENT ENTRY</u>

     : 

TAMMY ANNETTE BRYANT,      : 

     :      **RELEASED 6/27/13**

     Defendant-Appellant.      : 

_____

APPEARANCES:

Brenda K. Neville, Meyers & Neville, LLC, Chesapeake, Ohio, for appellant.

Tyler B. Smith, Tyler Beckett Smith Law Firm, Huntington, West Virginia, for appellee.
_____

Harsha, J.

{¶1} In this domestic relations action Tammy Annette Bryant appeals the trial court's denial of her motion to dismiss and subsequent judgment entry designating Michael David Robinette as the primary residential parent and legal custodian of their child. Bryant first argues that the trial court erred by denying her motion to dismiss because Ohio lost jurisdiction of the case when she and the parties' minor daughter moved to Kentucky and none of the parties remained in Ohio. However, R.C. 3127.16 does not totally divest a trial court of jurisdiction if the parties move out of state; rather the court only loses its claim to exclusive jurisdiction. Thus assuming the statute applies, the trial court retained its continuing jurisdiction after Bryant and the child left Ohio.

{¶2} Next Bryant contends that the trial court erred by considering the case as an initial allocation of parental rights under R.C. 3109.04 and then applying the best

interests of the child standard.  She argues the court should have considered the parties' dispute as a modification of a prior court order and thus determined whether there had been a substantial change in circumstances.  Contrary to Bryant's assertions, a trial court's "modification" of its temporary orders does not invoke the substantial change in circumstances test identified in R.C. 3109.04(E).  Rather, R.C. 3109.04(E) only applies when there has been a final decree.  Because the magistrate in the case was making an original allocation of parental rights, it correctly utilized the best interests of the child test under R.C. 3109.04(B).

{¶3}    Bryant also argues that the trial court abused its discretion when it designated Robinette as the residential parent.  She claims the court's reasoning was flawed because it adopted the guardian ad litem's (GAL) report and testimony, which were biased and misconstrued the facts.  However, Bryant did not raise any issue with the GAL in her objections to the magistrate's decision, so she has waived all but plain error on appeal.   The magistrate thoroughly analyzed all evidence, including the GAL's report, under the factors identified in R.C. 3109.04(F)(1) to determine the child's best interests.  And because a trial court may adopt a magistrate's decision in the absence of a specific objection or an obvious error apparent on the face of the decision, the trial court did not commit plain error by designating Robinette as the residential parent.

{¶4}    Finally, Bryant claims that the trial court failed to follow the local rule's standard guidelines when it established her parenting time.  Again she bases her argument on GAL's report and testimony.  Because she did not raise this issue in her objections to the magistrate's decision, she has waived all but plain error.  The record shows that the magistrate examined all the evidence to determine the appropriate

parenting time in accordance with the child's best interests. Because there was no apparent error or other defect on the face of the decision, the trial court was free to adopt it. Thus there is no plain error here.

## I. FACTS

{¶5} This appeal involves a dispute over the parental rights regarding the parties' minor daughter. Michael David Robinette initiated this action by filing a petition to establish paternity and shared parenting in the Lawrence County Court of Common Pleas shortly after the child's birth. The parties were unmarried and at the time, Robinette was a resident of West Virginia; Tammy Annette Bryant and the child were residents of Ohio. The magistrate issued a temporary order, agreed to by the parties, making Bryant the residential parent, granting Robinette parenting time each week, and ordering him to pay child support. Later, the magistrate issued another temporary order and increased Robinette's parenting time.

{¶6} Subsequently, Bryant filed a petition for custody in Kentucky and a motion to dismiss with the trial court in Ohio. In that motion, Bryant claimed that Ohio no longer had jurisdiction because she and the child had moved to Kentucky and had been living there for six months. The magistrate denied the motion, finding that Ohio retained jurisdiction to make an initial custody determination because Ohio was the child's home state at the time Robinette filed the action. Bryant filed an objection to the magistrate's decision.

{¶7} The matter proceeded to trial on Robinette's original petition for shared parenting and subsequent motion for change of custody. The magistrate entered a decision, in which she recommended that the trial court designate Robinette as

residential parent and legal custodian of the child and that Bryant should receive liberal

parenting time in addition to the minimum schedule set forth in the entry.  After Bryant

filed objections, the trial court found that the magistrate properly overruled Bryant's

motion to dismiss and adopted the magistrate's findings of fact and conclusions of law.

This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶8}    Bryant raises four assignments of error for our review:

1. THE TRIAL COURT ERRED IN DENYING BRYANT'S MOTION TO DISMISS, FOR OHIO LOST JURISDICTION OF THE CASE WHEN BRYANT AND [THE CHILD] ESTABLISHED A NEW HOME STATE IN KENTUCKY AND NO PARTY TO THE OHIO ACTION REMAINED IN OHIO.

2. THE TRIAL COURT'S USE OF AN INCORRECT STANDARD IN DETERMINING WHETHER THE PRIOR CUSTODY ORDER SHOULD BE MODIFIED REQUIRES THE REVERSAL OF ITS SEPTEMBER 4, 2012 JUDGMENT ENTRY.

3. THE TRIAL COURT'S DECISION TO MAKE ROBINETTE THE RESIDENTIAL PARENT OF [THE CHILD] WAS AN ABUSE OF DISCRETION.

4. THE TRIAL COURT IMPROPERLY FAILED TO FOLLOW THE STANDARD VISITATION GUIDELINES.

## III. LAW AND ANALYSIS

### A. Jurisdiction

{¶9}    Bryant first challenges the trial court's denial of her motion to dismiss and

argues that the court lost jurisdiction of the case after she and the child moved from

Ohio to Kentucky.

{¶10}  Subject matter jurisdiction is defined as a court's power to hear and

decide cases and may be raised at any time. *Enz v. Lewis*, 4th Dist. No. 10CA3357,

2011-Ohio-1229, ¶ 10.  A motion to dismiss for lack of subject matter jurisdiction raises a question of law, which we review de novo. *Id.*

{¶11}  In Ohio, jurisdiction in child custody matters is determined by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and codified in R.C. Chapter 3127.  *McGhan v. Vettel*, 122 Ohio St.3d 227, 2009-Ohio-2884, 909 N.E.2d 1279, ¶ 19.  "The purpose of the [UCCJEA] is to avoid jurisdictional conflict and to promote cooperation between state courts in custody matters so that a decree is rendered in the state that can best decide the best interest of the child." *Thebeau v. Thebeau*, 4th Dist. No. 07CA34, 2008-Ohio-4751, ¶ 17.  The UCCJEA gives "'jurisdictional priority and exclusive continuing jurisdiction to the home state.'" *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 21, quoting Annotation, Construction and Operation of Uniform Child Custody Jurisdiction and Enforcement Act (2002), 100 A.L.R.5th 1, 20, Section 2 [b].

{¶12}  The parties agree that under R.C. 3127.15 jurisdiction was originally proper in Ohio because at the time Robinette initiated the action Ohio was the child's home state.  R.C. 3127.15(A)(1) provides that an Ohio court has jurisdiction to make an initial determination in a child custody proceeding if Ohio is the "home state" of the child at the commencement of the proceeding.  R.C. 3127.01(B)(7) defines "home state," in part, as "the state in which a child lived with a parent * * * for at least six consecutive months immediately preceding the commencement of a child custody proceeding and, if a child is less than six months old, the state in which the child lived from birth with any of them."  Here, because the child was only two weeks old and had

lived with Bryant in Ohio since birth when Robinette filed this action, we agree that Ohio was the child's home state when this case commenced.

**{¶13}**  However, Bryant argues that Ohio lost jurisdiction by virtue of R.C. 3127.16 once she and the child moved to Kentucky and none of the parties remained in Ohio.  Specifically, Bryant contends that the magistrate's temporary orders concerning parental rights and parenting time with the child qualify as initial custody determinations under R.C. 3127.15; after making these initial custody determinations, the trial court lost jurisdiction because neither parent continued to reside in Ohio. Robinette counters that R.C. 3127.16 is not applicable and that the court properly exercised jurisdiction under R.C. 3127.15 to make an initial custody determination because his original motion was still pending at the time Bryant filed the motion to dismiss.  We conclude even if we assume the magistrate's temporary orders qualified as an initial custody determination under R.C. 3127.15, Ohio was not totally divested of jurisdiction once Bryant and the child moved out of state.

**{¶14}**  R.C. 3127.16 provides:

Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state that has made a child custody determination consistent with section 3127.15 or 3127.17 of the Revised Code has exclusive, continuing jurisdiction over the determination until the court or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

**{¶15}**  R.C. 3127.01(B)(3) then defines child custody determination:

"Child custody determination" means a judgment, decree, or other order of a court that provides for legal custody, physical custody, parenting time, or visitation with respect to a child.  "Child custody determination" includes an order that allocates parental rights and responsibilities.  "Child custody determination" includes permanent, temporary, initial, and modification orders. "Child custody determination" does not include an order or the

portion of an order relating to child support or other monetary obligations of an individual.

**{¶16}** "[S]ubject matter jurisdiction is evoked at the time of the child custody proceeding, and cannot be lost while the motion remains pending unless statutorily relinquished to another jurisdiction exercising proper proceedings." *Mulatu v. Girsha*, 12th Dist. No. CA2011-07-051, 2011-Ohio-6226, ¶ 44. Contrary to Bryant's assertions, under R.C. 3127.15, once the trial court has made an initial custody determination, R.C. 3127.16 simply sets forth the terms under which Ohio no longer has exclusive jurisdiction. *Id.* at ¶ 45. In other words, R.C. 3127.16 sets forth the possibility that Ohio is not the only state with jurisdiction and does not strip it of total jurisdiction. *Id.* To hold otherwise would "'condone blatant forum-shopping'" and circumvent the very purpose of the Uniform Act. *McGhan*, 122 Ohio St.3d 227, 2009-Ohio-2884, 909 N.E.2d 1279, at ¶ 27, quoting *In re Marriage of Sareen*, 153 Cal.App.4th 371, 380, 62 Cal.Rptr.3d 687 (2007). *See also Mulatu* at ¶ 46.

**{¶17}** This is exactly the type of situation we have in this case. Robinette's initial motion was unresolved and still pending when Bryant filed her motion to dismiss. To accept her interpretation of R.C. 3127.16 would essentially allow her to evade determination of the case in Ohio by moving to another state. This is especially true considering that Bryant filed the custody action in Kentucky only seven days prior to the final hearing in this case and one day after the GAL filed her report recommending that Robinette be designated as the residential parent. Moreover, at the time that Bryant moved to Kentucky this case had been pending in Ohio for over a year and continued several times at her request.

{¶18}  Bryant cites *Pearson v. Pearson*, 4th Dist. No. 04CA6, 2005-Ohio-4909, and *Lati v. Lati*, 2nd Dist. No. 2007 CA 37, 2008-Ohio-1871, to support her argument that Ohio lost jurisdiction once she and the child moved to Kentucky.  However, her reliance on these cases is misplaced.  Unlike our case, in *Pearson* at the time the plaintiff filed the motions for contempt and to modify child support none of the parties or the children lived in Ohio.  Thus under the UCCJA, the UCCJEA's predecessor, there was no basis for the court to exercise jurisdiction.  *Lati* also concerned similar circumstances.  In that case, although the parties were granted a divorce in Ohio, at the time the plaintiff filed the motion for contempt, neither parent or the child lived in the state.

{¶19}  Accordingly, neither *Pearson* nor *Lati* address a parent's move out of state during the pendency of the case.  More importantly, in both cases another state intended to assert jurisdiction.  Here, the trial court stated in its judgment entry that the magistrate communicated with the Kentucky court and "proceeded with the case understanding Kentucky's agreement that Ohio was properly exercising its jurisdiction regarding this case."  Thus, we do not consider these cases as support for Bryant's claims and reject her first assignment of error.

### B. Initial Allocation v. Modification of Parental Rights

{¶20}  In her second assignment of error, Bryant argues that the trial court erred by considering the case as an initial allocation of parental rights under R.C. 3109.04 and incorrectly applied the best interests of the child standard.  Rather, she claims that the court should have considered the parties' dispute as a modification of a prior court

order and determined whether there had been a substantial change in circumstances.

This argument is meritless.

**{¶21}** R.C. 3109.04(B)(1) governs initial allocations of parental rights and

requires trial courts making initial allocations to apply a "best interest of the child test."

*In re Johnson*, 166 Ohio App.3d 632, 2006-Ohio-1125, 852 N.E.2d 1223, ¶ 11 (4th

Dist.).  R.C. 3109.04(B)(1) provides:

> When making the allocation of the parental rights and responsibilities for
> the care of the children * * * in an original proceeding or in any proceeding
> for modification of a prior order of the court making the allocation, the
> court shall take into account that which would be in the best interest of the
> children.

**{¶22}** "R.C. 3109.04(E)(1)(a) governs modifications of prior custody decrees

and prohibits modification unless the trial court finds that a change has occurred in the

circumstances of the child or his residential parent and finds that modification is

necessary to serve the best interest of the child." *Id.* at ¶ 13.

**{¶23}** However, "[g]enerally, the requirements of R.C. 3109.04 apply to 'a final

appealable order, not an interlocutory, temporary order.'" *Taylor v. Taylor*, 9th Dist. No.

11CA010071, 2012-Ohio-4097, ¶ 6, quoting *State ex rel. Thompson v. Spon*, 83 Ohio

St.3d 551, 554, 700 N.E.2d 1281 (1998).  Accordingly, "[t]he changed circumstances

test in R.C. 3109.04(E) only applies when modifying custody after the final allocation,

and it does not apply merely because temporary orders had been issued." *Mummey v.*

*Mummey*, 7th Dist. No. 10NO371, 2010-Ohio-4243, ¶ 17.  *See also Adkins v. Adkins*,

4th Dist. No. 571, 1989 WL 25708, *3 (Mar. 22, 1989) (finding change of circumstances

standard only applicable when there has been a final decree).

**{¶24}** Here, R.C. 3109.04(E) and its change in circumstances test are inapplicable because the trial court had not yet entered a final decree regarding the parties' parental rights. Although the magistrate had entered temporary orders, they do not qualify as a final decree. Thus, when making the original allocation of parental rights the court's duty was only to determine the child's best interests under R.C. 3109.04(B), which it did. Accordingly, we reject Bryant's argument and overrule her second assignment of error.

### C. Allocation of Parental Rights

**{¶25}** Bryant's third assignment of error surrounds the GAL's report and testimony. Specifically, she argues that the trial court "simply adopted" the magistrate's decision and recommendation, which in turn "parroted the findings of the GAL report." In other words, Robinette contends neither the magistrate nor the judge should have relied upon the GAL's report because it was based upon her "own personal biases, her misunderstanding of the facts, and her misapplication of the rules concerning relocation of a custodial parent." And by relying upon the GAL the trial court abused its discretion by designating Robinette as the residential parent.

**{¶26}** However, Bryant did not object to the magistrate's decision on this basis. In fact, nowhere in Bryant's objection does she mention the GAL or her report. Rather, she only contends that the magistrate gave inappropriate weight to certain R.C. 3109.04(F)(1) factors and made findings contrary to the evidence, concerning her move to Kentucky, allegations of abuse, and supervision of the child.

**{¶27}** Juv.R. 40(D)(3)(b)(ii) requires that a party's objection to a magistrate's decision "shall be specific and state with particularity all grounds for objection."

Moreover, Juv.R. 40(D)(3)(b)(iv) states that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion * * *." And because "[a]ppellate courts have held that the failure to file specific objections is treated the same as the failure to file any objections," Bryant has forfeited all but plain error on appeal. *In re D.R.*, 7th Dist. No. 12MA16, 2012-Ohio-5341, ¶ 11. *See also Babcock v. Welcome*, 4th Dist. No. 11CA3273, 2012-Ohio-5284, ¶ 15 (applying plain error review under Juv.R. 40(D)(3)(b)(iv) when the party failed to timely object to the magistrate's decision regarding parental rights).

{¶28}  "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. Plain error is particularly difficult to establish here because parental rights determinations "are some of the most difficult and agonizing decisions a trial judge must make," and, therefore appellate courts must grant "wide latitude" to the trial court's consideration of the evidence. *See Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶29}  As we have already determined under Bryant's second assignment of error, this was an initial allocation of parental rights where, "[t]he trial court's primary concern is a child's best interest." *Gehring v. Gehring*, 12th Dist. No. CA2003-03-038,

2004-Ohio-95, ¶ 7; R.C. 3109.04(B)(1).  *See also Roberts v. Bolin*, 4th Dist. No.

09CA44, 2010-Ohio-3783, ¶ 22.  Therefore, the magistrate had to consider all relevant

factors related to the child's best interest, including the following factors identified in

R.C. 3109.04(F)(1):

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
>
> (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * * whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
>
> (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶30}** In addition to the factors identified in R.C. 3109.04(F)(1), when determining whether shared parenting is in the best interest of the children, the court must consider all relevant factors, including, but not limited to, all of the following factors in R.C. 3109.04(F)(2):

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

**{¶31}** Here, the magistrate indicated in her decision that the parties "though intellectually capable, are not currently able to communicate with one another in a positive manner and that a Shared Parenting Order would not be in the child's best interest." After finding that a shared parenting arrangement was not in the child's best interest, the court went on to expressly discuss each factor in R.C. 3109.04(F)(1). Of importance the magistrate found that under subsection (f) of the statute, Robinette was the parent more likely to honor and facilitate parenting time. In making this determination, the magistrate found it disturbing that Bryant "reported possible abuse, knowing that the child had diaper rash, and was able to restrict the father's parenting time for approximately one month." The magistrate also found it disturbing that

Bryant communicated with Robinette through email that she "cannot and will not live my life by a court order any longer" and that she continued the final hearing in the case in an apparent attempt to forum shop.

**{¶32}** Under subsection (j) the magistrate found that since Robinette initiated the action, Bryant has established residence outside Ohio. The magistrate considered that Bryant relocated due to employment, and though her new position was a "lateral move" it held the "potential for future advancement." The magistrate went on to find that Bryant's "move appears to have been motivated by a desire to remove herself and the child from the vicinity of Mr. Robinette as evidenced by the email entered into evidence where she stated 'Since you refused to talk to me, I had no other option but to work very hard and earn that promotion in order to get out from under the threat of legal action.'" More importantly, the magistrate determined that the "move has caused it to be difficult for the child to have regular and frequent contact with both parents, as she enjoyed prior to the move. Currently, the child is with each parent for a week at a time and now has two day care facilities, two doctors, and two parents who do not communicate well with one another. The current arrangement is not in the best interest of the child and is not sustainable." The magistrate also considered several injuries that the child suffered while in Bryant's care, including a broken collar bone and burns to her feet from a flat iron. The magistrate found "[a]lthough, it is expected that young children will have multiple minor injuries due to their newly found mobility, many accidents are related to the lack of appropriate supervision."

**{¶33}** In adopting the magistrate's findings of fact and conclusions of law, the trial court stated it had independently reviewed Bryant's objections to the magistrate's

decision and recommendation and determined that the "[m]agistrate properly analyzed this case under the best interest standard and the factors set forth in ORC 3109.04(F)(1)."  We agree.

**{¶34}**  Here, it is clear that the magistrate's decision properly considered the child's best interests and analyzed all the evidence, according to the statutory factors. And because a trial court may adopt a magistrate's decision in the absence of a specific objection or an obvious error apparent upon the face of the decision, we cannot say the decision to designate Robinette as the residential parent was erroneous.  *See Wolf v. Wolf*, 11th Dist. No. 2003-P-0047, 2004-Ohio-2923, ¶ 9. Moreover, the trial court stated in its judgment entry that it had conducted an "independent review of the record" and that "[t]he guardian ad litem's report has been considered by the court in its decision but not as being conclusive on the ultimate issue."  Accordingly, there is nothing in the record to demonstrate that the trial court's adoption of the magistrate's recommendation seriously affected the basic fairness, integrity, or public reputation of the judicial process in this case so as to support a finding of plain error.  Accordingly we reject Bryant's third assignment of error.

D. Parenting Time

**{¶35}**  In her fourth assignment of error, Bryant argues that the trial court failed to follow the Loc.R. 15 of the Court of Common Pleas of Lawrence County, Juvenile Division, regarding the standard parenting time guidelines.   Again however, she bases her argument solely on an allegedly improper adoption of the GAL's findings. Specifically, she complains that due to the GAL's prejudice, it was improper for the

magistrate and trial court to adopt the GAL's recommendation regarding parenting time.

**{¶36}** In her objection to the magistrate's decision and recommendation the only issue Bryant raised with her parenting time was that the magistrate "d[id] not even recommend that the Defendant receive Rule 15 visitation, despite the fact that the parties continue to reside within 150 miles of each other.  Rule 15 is based on the assumption and contemplation that the parties reside within 150 miles of each other." Thus, because Bryant did not raise any issue with the GAL or her report in her objections, she has waived all but plain error.

**{¶37}** The magistrate stated in her decision that:

Based upon the testimony presented, evidence introduced and application of the factors under ORC Section 3109.04, it is the recommendation that plaintiff, Michael Robinette, be designated the residential parent and legal custodian of the minor child * * *, with defendant, Tammy Bryant receiving libel parenting time, with a minimum of the following:

One weekend a month from Friday until Sunday, unless Monday is a legal holiday, if so then until Monday. (The parties should coordinate so the mother's weekend is the long weekend, if there is one in the month.)  The parties shall meet half way at 7:00 pm unless otherwise agreed.

One additional weekend per month from Friday until Sunday with said visitation occurring in the tri-state area.

Each parent shall be entitled to ten (10) consecutive days of summer vacation for years 2013 and 2014.  Beginning in 2015, they shall exchange the child weekly during the child's summer school break * * *.

Holidays: the parties shall share the holidays as can be agreed * * *.

If the mother is going to be in the tri-state area, additional time not listed above, is encouraged.  Mother should give advance notice and requests for additional time should not be unreasonably denied.

**{¶38}** The Loc.R. 15 of the Court of Common Pleas of Lawrence County,

Juvenile Division, states:

> The following provisions shall control visitation with minor children in all custody proceedings and shall not be modified expect for the showing of good cause. The Court may amend this visitation schedule when it is found that a parent has not had opportunity to be familiar with a child and the child's personal needs. However in such event, the Court would anticipate the schedule of visitation would progress to full Rule 15 visitation with a reasonable period of time.
>
> Whenever the term "standard visitation" for a non-custodial parent appears in an entry, it shall be defined in the following provisions unless the Court determines that in the best interests of the child, the times be changed or reduced:
>
> * * *
>
> (a) Visitation where parents live within a one hundred and fifty (150) mile radius of each other.
>
> (i) Weekends: The non-custodial parent shall have visitation every other weekend from 6:00 p.m. on Friday until 8:00 p.m. on Sunday, unless the following Monday is a school day or a pre-school day for the children. On such occasions, visitation shall end at 6:00 p.m. on Sunday.
>
> (ii) Weekdays: The non-custodial parent shall have visitation from 4:00 p.m. to 8:00 p.m. on one weekday. In the event the parents cannot agree, such visitation shall occur on Wednesday.

**{¶39}** R.C. 3109.051(F)(2) requires each court of common pleas to adopt

standard parenting time guidelines and states "[a] court shall have discretion to deviate

from its standard parenting time guidelines based upon factors set forth in division (D)

of this section." R.C. 3109.051(D) requires a court to consider all of the following

factors if relevant:

> (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
>
> (2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical

location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or

pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

**{¶40}** There is nothing in the record to indicate that the magistrate based her decision regarding parenting time solely on the GAL's report or testimony. Rather, the magistrate stated that she was basing her recommendation on all of the evidence and testimony presented at trial. Although her recommendation does not explicitly reference R.C. 3109.051(D)'s factors, Bryant does not raise this argument on appeal. And because it is clear that the court considered essentially the same factors when analyzing the best interests of the child under R.C. 3109.04(F)(1) we cannot say the trial court's deviation from Loc.R. 15 affected the basic fairness, integrity, or public reputation of the judicial process. Accordingly, there is no plain error and we overrule Bryant's fourth assignment of error.

                                                          JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas, Probate-Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.:  Concur in Judgment and Opinion.


For the Court



BY:  _____
     William H. Harsha, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**