[Cite as *Dyer v. Gomez*, 2022-Ohio-1127.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## NOBLE COUNTY

DAGMAR D. DYER,

Plaintiff-Appellee,

v.

JOHN PAUL GOMEZ,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 NO 0484**

---

Domestic Relations Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. 205-0135

**BEFORE:**
Carol Ann Robb, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed in part, Reversed and Remanded, in part.

---

*No Brief filed* for Plaintiff-Appellee and

*John Paul Gomez, pro se*, 3313 Kathy Drive, Pittsburgh, PA 15204 for Defendant-Appellant.

Dated: March 31, 2022

**Robb, J.**

{¶1} Appellant John Paul Gomez (the father) appeals the decisions entered by the Noble County Common Pleas Court on his child custody motions. In his first assignment of error, he argues the trial court should have granted his 2019 motion to modify parental rights and responsibilities. His motion was denied in 2020, and the findings of fact and conclusions of law were issued in 2021 (on this court's instruction due to the father's timely motion). The father sets forth other complaints under this assignment of error as well, such as a contention the case should not have been heard in Ohio based on his belief the home state of both children had changed to Pennsylvania. The judgment denying the father's 2019 motion to modify parental rights is affirmed.

{¶2} In his second assignment of error, the father argues the trial court should have relieved him of the obligation to pay child support to Appellee Dagmar Dyer (the mother) when the court granted his 2021 motion for custody of the parties' son. The September 21, 2021 judgment granting the father's 2021 motion is reversed to the extent it modifies custody in his favor *without* addressing his continuing child support obligation. The case is remanded for the trial court to address termination of the father's monthly child support obligation corresponding to the son and other matters related to child support.

<u>STATEMENT OF THE CASE</u>

{¶3} When the parties divorced in 2006, the mother was named the residential parent of both children (a daughter born in August 2003 and a son born in March 2005). *Gomez v. Gomez*, 7th Dist. Noble No. 06 NO 330, 2007-Ohio-1559. The father's initial motion to reallocate parental rights was denied, and that decision was eventually affirmed. *Gomez v. Gomez*, 7th Dist. Noble No. 10-NO-375, 2011-Ohio-2843 (after we reversed the finding on changed circumstances and remanded to address the children's best interest).

{¶4} On May 16, 2019, the father filed a motion to modify parental rights and responsibilities, and a motion to terminate child support as the son started living with him in Pittsburgh in April 2018 and the daughter started living with him in February 2019. A

hearing was conducted on July 26, 2019. On the same day, the father filed a motion to transfer the case to Allegheny County, Pennsylvania. The court denied the motion, finding jurisdiction and venue were proper. (8/8/19 J.E.; 9/10/19 J.E).

{¶5} The next hearing included an *in camera* interview with the children. As the father wished to present more evidence than time permitted, the hearing was continued. (8/30/19 Tr. 67-68). The daughter started staying at the mother's residence in mid-August. The court issued an order confirming the mother's custody of the daughter and ordering enrollment at a school in Ohio (pending a ruling on the father's modification motion). (9/10/19 J.E.). On September 23, 2019, the mother filed a motion seeking to confirm her legal status as the custodian of the son and to obtain physical custody of him.

{¶6} The father filed more motions protesting the case proceeding in Ohio. He asked the court to reconsider his motion to transfer the case to Allegheny County, disclosing he obtained a protection order against the mother and filed a motion for custody in that county's family court. He also moved to dismiss, claiming Ohio lacked jurisdiction and was an inconvenient forum.

{¶7} On October 30, 2019, the mother filed a motion to show cause for failing to comply with the original custody order and an emergency motion for physical custody of the son disclosing new issues (with school, running away, and the father's wife ejecting the son from the home). The mother attached an entry showing the court in Allegheny County dismissed the father's custody motion on October 17, 2019, as the court found the father "failed to establish proper jurisdiction/venue exists" in Pennsylvania. The court granted the mother's motion to obtain physical custody of the son and ordered the father to immediately surrender him. (11/4/19 J.E.).

{¶8} On November 22, 2019, the father filed motion to hold the mother in contempt for violating the Allegheny County protection order, which contained a provision granting him temporary custody of the son. The same day, the father filed a "renewed" motion for modification of parental rights and responsibilities. He said the children lacked stability and supervision, pointing to the time the son spent living with him (5/4/18-10/30/19) and the time the daughter spent living with him (2/7/19-8/16/19).

{¶9} There were delays in setting a further hearing after the father filed an original action in this district against the trial judge (and the mother), which the father

voluntarily dismissed weeks later. *State ex rel. Gomez v. Favreau*, 7th Dist. Noble No. 19 NO 0469 (filed 9/4/19). Soon after that dismissal, he filed a similar action in the Ohio Supreme Court, which was dismissed on December 13, 2019 on the judge's motion. *State ex rel. Gomez v. Favreau*, 157 Ohio St.3d 1508, 2019-Ohio-5152, 136 N.E.3d 493.

{¶10} The next hearing proceeded on January 17, 2020 but was continued after the father's presentation of his case took longer than expected; the court pointed out the mother was entitled to an opportunity to present evidence. The scheduling of the continued hearing was delayed after the father filed a notice of appeal from various orders entered between August and November of 2019. *Dyer v. Gomez*, 7th Dist. Noble No. 20 NO 0471. The appeal was dismissed in June 2020.

{¶11} The final day of the hearing proceeded on July 17, 2020. The trial court denied the father's motion and maintained the mother as the residential parent. (7/21/20 J.E. 1). Hours later, the court rejected the father's motion for findings of fact and conclusions of law, which had been filed the previous day. (7/21/20 J.E. 2). The father appealed from those entries. This court dismissed the appeal but instructed the trial court to issue findings of fact and conclusions of law. *Dyer v. Gomez*, 7th Dist. Noble No. 20 NO 0476, 2021-Ohio-1168.

{¶12} Less than three weeks after our April 1, 2021 decision, the father filed an original action in the Supreme Court seeking to compel the trial judge to issue findings of fact and conclusions of law. The judge's response pointed out: he acted as a visiting judge in this case; he retired when his term ended in February 2021; the regular common pleas court judge recused himself from this case years ago (and then retired in April 2021); the new common pleas court judge recused herself on April 28, 2021; and a visiting judge was recently assigned to this case. The Supreme Court dismissed the father's action on June 2, 2021. *State ex rel. Gomez v. Favreau*, 163 Ohio St.3d 1437, 2021-Ohio-1870, 168 N.E.3d 1192.

{¶13} While the new judge was reviewing the record in order to issue findings of fact and conclusions of law, the father filed a motion for temporary custody of the son. This August 24, 2021 motion explained a new development: a Muskingum County juvenile court placed the son in his custody as part of a plea agreement to avoid further juvenile incarceration. The father's motion said the mother agreed with the placement

and would visit on Sundays.  The court held a hearing on the motion and conducted an *in camera* interview of the son.

**{¶14}** On September 21, 2021, the trial court issued two judgments.  Both are encompassed in the father's notice of appeal.  First, in order to comply with the instructions of this court in the prior appeal, the trial court issued findings of fact and conclusions of law in support of the July 21, 2020 decision denying the father's 2019 motion to modify parental rights and responsibilities.  The father's first assignment of error on appeal contests this decision denying his 2019 motion.

**{¶15}** In the other judgment issued on September 21, 2021, the court granted the father's 2021 motion related to the son's custody.  The judgment set forth conclusions of law, recited new facts learned at the latest hearing, and referred to the prior situation in the case by incorporating the other findings of fact and conclusions of law (which were filed the same day).  In addition to the father's testimony on the juvenile delinquency adjudication and the mother's agreement with the placement, the court cited the latest *in camera* interview of the child and the exhibits.

**{¶16}** An hour later, the father filed a Civ.R. 52 motion for findings of fact and conclusions of law, expressing a belief it was "procedurally necessary" for him to do so but observing  "To the extent that this Honorable Court has satisfied this request in the combined Journal Entry dated September 21, 2021, the Court may render said motion moot."  On September 27, 2021, the court found the motion moot pointing to the findings of fact and conclusions of law in the entry granting him custody (including the incorporated findings and conclusions on the other decision).  The father's second assignment of error on appeal contests the failure to terminate child support while granting his 2021 custody motion.

<u>ASSIGNMENT OF ERROR ONE</u>

**{¶17}** The father's first assignment of error provides:

"The trial court erred by denying my Civil Rule 52 motion, abused its discretion failing to find change of circumstances and considering the best interests of the children; and that the harm likely to be caused by a change of environment was outweighed by the advantages of the change.  Thus, failed to modify allocation [of] parental rights and responsibilities violating my due process and right to raise my children unreasonably,

arbitrarily, and unconscionably to my prejudice against the manifest weight of the evidence."

{¶18} As to the assignment of error's reference to the denial of his Civ.R. 52 motion, the father points out the original judge denied his July 20, 2020 motion for findings of fact and conclusions of law. He believes the judge who was assigned the case after this court instructed the trial court to issue findings of fact and conclusions of law misinterpreted this court's instruction and the rule as constraining the trial court to maintain the July 21, 2020 judgment. He says the trial court was not required to support the "irrational" decision denying his 2019 motion.

{¶19} However, the trial court did not believe the denial was irrational. Furthermore, reconsideration of a final judgment is a nullity. *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 379-381, 423 N.E.2d 1105 (1981), fn. 1 (consistent with Civ.R. 54(B), only an interlocutory order is subject to revision). Relief from a judgment is only available by rule, such as Civ.R. 59 (motion for new trial) or Civ.R. 60(B) (motion for relief from judgment). *Id.* at 380. App.R. 4(B)(2) tolls the time for appealing an "otherwise final" judgment when there is a pending timely motion for findings of fact and conclusions of law.

{¶20} The fact that a ruling is pending on a motion for findings of fact and conclusions of law does not mean a court can reconsider the otherwise final judgment. *Perfection Graphics Inc. v. Sheehan*, 11th Dist. Geauga No. 93-G-1776 (Mar. 3, 1995) (a motion seeking reconsideration is not proper merely because the time for appealing was tolled by a motion for findings and conclusions). It has been observed:

> Filing a Civ.R. 52 motion means the judgment is not final for purposes of appeal, pursuant to App.R. 4, but that does not mean that it is not final for other purposes. * * * There is no provision in Civ.R. 52 to permit the trial court to reconsider or change its judgment pursuant to a request for findings of facts and conclusions of law. Civ.R. 52 provides a vehicle for a trial court to clarify its judgment, not to modify an otherwise final judgment.

*Vanderhoff v. Vanderhoff*, 3d Dist. Seneca No. 13-09-21, 2009-Ohio-5907, ¶ 12. Upon pointing out the divorce judgment was final under R.C. 2505.02, Civ.R. 54, and Civ.R. 75(F), the Third District concluded the court could not reconsider the judgment,

notwithstanding the pending motion for findings of fact and conclusions of law. *Id.* at ¶ 14-16. *See also Hein Bros. v. Reynolds*, 7th Dist. Belmont No. 21 BE 0017, 2021-Ohio-4633, ¶ 42 (where the court asked for proposed findings and conclusions, we held: "after a court announces its decision, the chance to file proposed findings of fact and conclusions of law is not meant to be a reconsideration procedure").

**{¶21}** In any event, the trial court specifically opined the father failed to meet his burden to present sufficient evidence to support a modification of parental rights and responsibilities under R.C. 3109.04. This leads to the father's argument that the trial court abused its discretion in denying his 2019 motion for modification of parental rights and responsibilities.

**{¶22}** A trial court's custody modification decision is reviewed for an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 416, 421, 674 N.E.2d 1159 (1997). Pursuant to statute:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

R.C 3109.04(E)(1)(a). This statute then states the court shall retain the previously designated residential parent unless one of the following applies: (i) the residential parent agrees to change the residential parent; (ii) the child has been integrated into the other parent's family with the residential parent's consent; or (iii) the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. R.C 3109.04(E)(1)(a)(i)-(iii). The father relies on subdivision (iii), arguing any harm from a change of environment would be outweighed by the advantages to the child.

**{¶23}** The father complains the original judge described the children's time living with him as "extended visitation" accomplished without motion or court order and found "there had been an agreement that the children should remain in the custody of their

mother in Ohio * * *." However, the comments were making the point that the court's prior designation of the mother as residential parent was not changed by the children's relocation to Pittsburgh with the mother's consent. The mother testified that after the house was burglarized and she suffered an accident in the same weekend, they agreed the son would move to Pittsburgh with the father temporarily; she said they did not agree it was a permanent move. (7/26/19 Tr. 7, 9). This was explained in ¶ 5 of the court's findings of fact. (9/21/20 J.E.1).

{¶24} As for a change of circumstances, the father's May 2019 motion said the son began living with him in Pittsburgh in the spring of 2018 and attended school there for the 2018-2019 school year and the daughter moved into his residence and began school there in February 2019. The daughter returned to the mother's residence in August 2019, and the son returned to the mother's residence in November 2019. The father's brief points out the son also lived with him for a time in 2012 and the daughter lived with him for a time in 2015. He also points to the mother's many moves since the prior order and says she was unavailable to supervise the children as she has three jobs.

{¶25} A change of circumstances must be a "change of substance, not a slight or inconsequential change"; however, the change need not be substantial. *Davis*, 77 Ohio St.3d at 418 (taking no issue with the appellate court requiring the change to be "substantiated, continuing, and have a materially adverse effect upon the child"). A court is not bound by a child's status at the time a motion is filed and may consider later events in ascertaining changed circumstances, as the hearings may take time to conduct and important developments may have occurred. *Hagan v. Hagan*, 5th Dist. Delaware No. 18 CAF 03 0030, 2019-Ohio-51, ¶ 35

{¶26} The father criticizes ¶ 7 of the conclusions of law where the trial court said the parties' various alterations in the children's living arrangements do "not necessarily constitute a change of circumstances pursuant to R.C. 3109.04." Although they had moved in with their father, they then moved back to their mother. In the next sentence, the court proceeded to discuss various behavioral issues that have arisen with the children. By the time of the final hearing on the 2019 motion, each child had experienced an adverse change (Guernsey County juvenile adjudication with probation for one and pregnancy for the other).

Case No. 21 NO 0484

**{¶27}** Assuming the totality of evidence sufficiently evinced a change of circumstances, we move to the remaining modification provisions. "[I]f the threshold test of changed circumstances is not met, then a court is prohibited from granting the non-residential parent's motion to reallocate parental rights (by finding a change of custody would be in the child's best interest). Yet, this does not mean a court cannot make alternative holdings in support of its denial of modification." *Chick v. Chick*, 7th Dist. Columbiana No. 19 CO 0021, 2020-Ohio-4431, ¶ 30-31 ("Even where a trial court finds a lack of changed circumstances, the trial court is permitted to make alternative holdings on the best interest test and the harm versus advantage test.").

**{¶28}** In outlining the behavioral problems, the trial court found issues arose in both households and the prior agreements to relocate the children were not necessarily in each child's best interest at the time. The court then said it considered the best interest factors in R.C. 3109.04(F)(1) and listed the factors considered. The court concluded the modification proposed by the father was not in either child's best interest and the harm from another change in environment was not outweighed by the advantages of the change of environment to each child. To the contrary, the father urges the modification would have been in each child's best interest and the benefits of the modification would outweigh any harm.

**{¶29}** We review the best interest factors. The father moved for modification of parental rights and responsibilities, and the mother wished to maintain her residential parent status. *See* R.C. 3109.04(F)(1)(a) (wishes of parents). Notably, the father essentially withdrew his request for custody of the daughter at the final hearing where he declared: "I will grant [the daughter's] wishes to stay here with her mom in Cambridge * * *." He pointed out she was just turning 17, was pregnant, and the baby's father lived near her. (7/17/20 Tr. 33). At the time of the final hearing on the 2019 motion, the son was 15 years old. The children's wishes and concerns were considered, and the court conducted *in camera* interviews. *See* R.C. 3109.04(F)(1)(b).

**{¶30}** The father emphasized the mother was working three jobs at once: she owned a salon; she sold items for a beauty supply company; and she bartended three to four nights a month (while the father had the children). The father complained the mother moved many times in the past ten years. We note the moves were all within the same

area. At the time of the August 2019 hearing, the mother lived in a two-bedroom apartment above her salon in Cambridge. By the time of the final hearing in July 2020, she had moved with the children to a three-bedroom house, still in Cambridge.

{¶31} The father lived with his wife and their four children in Pittsburgh. *See* R.C. 3109.04(F)(1)(j) (residence out of state). As acknowledged by the mother, the children at issue here missed their four half-siblings. *See* R.C. 3109.04(F)(1)(c) (relationship with those who may significantly affect child's best interest).

{¶32} Yet, the daughter was prohibited from visiting the father's residence due to a civil protection order which his wife obtained against the daughter in Pennsylvania. (1/17/20 Tr. 141; 7/17/20 Tr. 31). There was also a physical incident between the father's wife and the son; according to the mother's testimony, Children Services was involved. (7/17/20 Tr. 7, 15). The father acknowledged his wife attempted to hit the son for being disrespectful and he had to calm his wife. They then had a disagreement, prompting him to move with the son to another location for a month. (7/17/20 Tr. 26-27). The father also acknowledged there were incidents of each child running away while in his care. (7/17/20 Tr. 35). The father's witness found the daughter at a bus stop in downtown Pittsburgh after she jumped out of her father's car; the witness said the daughter wanted to go home as she missed her mother and friends. (8/30/19 Tr. 25). The father accused the mother of encouraging the children to run away.

{¶33} The father presented evidence on his parenting style and his dedication to the children's upbringing and their participation in an after-school program conducted by a non-profit run by his wife. *See* R.C. 3109.04(F)(1)(d) (adjustment to home, school, and community). The father urged the children received much-needed supervision and stability after the son moved to his residence in May 2018 and the daughter moved to his residence in February 2019 (until the mother sought their return).

{¶34} At the time of the final hearing, the daughter was about to be a junior in high school in the district where she lived with her mother; they were considering an online option which became available due to the pandemic. She worked at the salon owned by the mother. (7/17/20 Tr. 10, 12).

{¶35} The son adjusted to his prior charter school in Pennsylvania where he attended eighth grade for the 2018-2019 school year. However, that entity had no high

school. The mother wanted the son to come home to start ninth grade, but the father enrolled him at the Catholic high school in Pittsburgh which the daughter attended the prior spring. The son then moved back to the mother in November 2019 and suffered issues with school. In the summer of 2020, the son was working full-time at a fast food restaurant. The mother believed this was beneficial to him while the father said he would disallow work once school started (and allow 15 hours in the summer). (7/17/20 Tr. 37).

**{¶36}** The trial court said it considered the mental and physical health of all involved. *See* R.C. 3109.04(F)(1)(e). The father testified about attending family therapy. The daughter was approximately six months pregnant.

**{¶37}** The mother facilitated visitation in the past, and there was no indication the father would not facilitate visitation if he was granted custody. *See* R.C. 3109.04(F)(1)(f),(i). It seemed the father's more recent lack of visitation was attributable to the dynamic with the father's wife (and her protection order against the daughter). After the father's May 2019 motion was filed, the mother complained he was keeping custody of the children contrary to the court's designation of the mother as the residential parent. The father pointed out he initially relied on their verbal agreement about custody; the mother said they agreed it was temporary. He claimed she only cared that the children wanted to return to her because she feared she would lose the child support he was paying.

**{¶38}** On the best interest factor related to past child support, the father paid child support as ordered and did not seek termination until a year after the son began living with him in May 2018. *See* R.C. 3109.04(F)(1)(g). After the daughter also moved in with him in February 2019, the mother provided him with her child support debit card. He then filed a motion to terminate support in May 2019 along with the motion to modify parental rights.

**{¶39}** As the court pointed out, there was no evidence either parent acted in a manner resulting in an abused or neglected child. *See* R.C. 3109.04(F)(1)(h). As to this factor, the father points to the Pennsylvania protection order issued against the mother with regards to her threats against him and his wife.

**{¶40}** In reviewing a custody modification decision for an abuse of discretion, we do not substitute our judgment for that of the trial court. See *Davis,* 77 Ohio St.3d at 416,

421; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  In evaluating a case under the abuse of discretion standard, the court determines whether the decision was arbitrary, unconscionable, or unreasonable.  *Blakemore*, 5 Ohio St.3d at 219.  "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.  A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAA Ents. Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).  "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

**{¶41}** With these standards governing and pointing to our review of the best interest factors conducted above, we hereby conclude the decision denying the father's 2019 motion to modify parental rights and responsibilities was not arbitrary or unconscionable, and there exists a sound reasoning process that would support such a decision.

Delay

**{¶42}**  The father complains about the delay between his 2019 motion and the July 2020 final hearing and ruling on the motion.  Our review of the record indicates the father was the cause of delay during this time, as supported by our above Statement of the Case.  As a recap, the case was promptly heard in July and August 2019 on a May 2019 motion.  Because the father wished to present more evidence than time permitted, the August hearing was continued.  The hearing was not held until January 2020 due to the original actions filed by the father against the judge.  That is, he filed an original action against the judge in this court on September 13, 2019.  Soon after that action was dismissed, he filed an original action against the judge in the Ohio Supreme Court on October 11, 2019, which was dismissed on December 13, 2019.

**{¶43}**  The hearing convened on January 17, 2020 but went longer than expected, and the court commented a further date was required to allow the mother to present a defense.  The father complains about this comment along with a statement in the findings

of fact and conclusions of law referencing his claim of racial discrimination[1] and his slow presentation. Yet, the court was merely reviewing the history of the case and explaining the judge can properly encourage the parties to move along when they start repeating themselves. *See* Evid.R. 403(B) ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."). The hearing was not rescheduled until July 17, 2020 because the father decided to file an untimely notice of appeal in January from interlocutory orders issued between August and November of 2019. The appeal was dismissed in June 2020, after which the final hearing was promptly scheduled. Accordingly, the delay between the first and last hearings on his 2019 motion was not caused by the trial court's inaction.

Ohio Court Maintaining Jurisdiction

**{¶44}** In the recitation of the issues presented and in the argument section under this assignment of error, the father briefly argues the trial court should have found Pennsylvania was the home state of both children. Although the father sets forth a lengthy and specific assignment of error arguing why the court erred in failing to modify custody, the text of the assignment of error does not mention or relate to his argument on jurisdiction.

**{¶45}** At the first hearing in the case, where the father's argument under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) was initially addressed, he said the son began living with him in Pennsylvania a year before he filed his motion to modify custody and the daughter began living with him around February 8, 2019 which he calculated to be six months as of the date of the July 26, 2019 hearing. (7/26/19 Tr. 16-17). However, the father's argument on the time the daughter spent in Pennsylvania was mathematically incorrect. As the mother and the court pointed out, the period he referred to (2/8/19 - 7/26/19) was less than six months.

---

[1] We note the father claims racism is evidenced by the original judge using German to repeat a remark initially made in English. However, this was not random linguistic usage with some underlying malicious intent but was clearly the product of earlier banter after the mother explained her first name was German and she was born in Germany; the court also repeated a comment in Spanish after the mother noted she grew up in Spain. (8/30/19 Tr. 3; 1/17/20 Tr. 140).

{¶46} Moreover, even assuming the home state issue was relevant to the modification proceedings, it would have been the time prior to the *filing* of his May 16, 2019 motion that would be relevant, not the time passing after his motion. "Home state" is defined in the UCCJEA as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months *immediately preceding the commencement of a child custody proceeding * * *.*" (Emphasis added.) R.C. 3127.01(B)(7). "Commencement" is specifically defined as "the filing of the first pleading in a proceeding." R.C. 3127.01(B)(5). The daughter was only with him for three months at the time of his motion.

{¶47} In any event, the father relied on R.C. 3127.15(A)(1) in making his transfer argument about the home state of the children. (7/26/19 Tr. 28). However, this statute applies to the court's "jurisdiction to make an *initial* determination in a child custody proceeding * * *." (Emphasis added.) R.C. 3127.15(A)(1). This statute can also be relevant when an Ohio court is determining whether there is jurisdiction to modify a custody order *of a different state.* R.C. 3127.17 ("a court of this state may not modify a child custody determination made by a court of another state" unless certain conditions exist), citing R.C. 3127.15.

{¶48} However in this case, *the prior initial determination in the child custody proceeding was made by an Ohio court.* Therefore, the pertinent statute is R.C. 3127.16. *See Slaughter v. Slaughter*, 10th Dist. Franklin No. 11AP-997, 2012-Ohio-3973, ¶ 22.[2] The statute relating to Ohio's continuing jurisdiction over its own custody orders provides:

> a court of this state that has made a child custody determination consistent with section 3127.15 or 3127.17 of the Revised Code has exclusive, continuing jurisdiction over the determination until the court or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

R.C. 3127.16 (with exception for temporary emergency custody in R.C. 3127.18).

---

[2] The case cited in the father's brief did not involve continuing jurisdiction upon a motion to modify an Ohio custody order; rather, it involved an initial determination of custody. *See Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420 (where the mother moved with the children to Ohio from West Virginia four months before filing her complaint for legal separation).

**{¶49}** We emphasize to the father the statute pluralizes "parents" and uses "and" (rather than "or") when asking if the child "and" the child's parents do not presently reside in Ohio. As Ohio had jurisdiction to make the initial custody determination, Ohio's continuing and exclusive jurisdiction does not terminate unless *none* of the listed parties still live in this state. R.C. 3127.16; *Slaughter,* 10th Dist. No. 11AP-997 at ¶ 23-25, citing *Lafi v. Lafi*, 2d Dist. Miami No. 2007 CA 37, 2008-Ohio-1871, ¶ 5, 12-13. Similarly, we note the federal Parental Kidnapping Prevention Act (PKPA) provides continuing jurisdiction to the state issuing the initial custody order if that state remains the residence of the child or of a person who claims a custody or visitation right with regards to the child. 28 U.S.C. 1738A (b) (defining contestant), (d) ("The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as [such court had jurisdiction under its state laws] and such State remains the residence of the child or of any contestant.").

**{¶50}** As modification of a prior Ohio custody order is sought: "the determinative fact in this case was whether either appellant or appellee or any of their children were residents of Ohio at the time [of the] motion to transfer venue. If none of these individuals was a resident of Ohio at that time, the domestic relations court no longer had continuing jurisdiction." *Slaughter,* 10th Dist. No. 11AP-997 at ¶ 27. As the mother continued to live in Ohio, which is the state of the initial custody determination, the father's argument on Pennsylvania's jurisdiction is without merit.

**{¶51}** Lastly, we note as to venue, "the legislature has entrusted trial courts with the discretion to determine whether their court is an inconvenient forum under R.C. 3127.21." *In re N.R.*, 7th Dist. Mahoning No. 09 MA 85, 2010-Ohio-753, ¶ 28. In that case, the court in Mercer County, Pennsylvania "expressed its willingness to accept jurisdiction in the event that the Ohio court chose to transfer the case." *Id.* at ¶ 5 (where the mother filed a motion in Ohio and the father filed a motion in Pennsylvania). Still, we concluded: "the trial court determined that retaining jurisdiction did not pose an inconvenience. While it is true that certain enumerated factors favored Pennsylvania as a more convenient forum, and others favored Ohio as more convenient, the trial court acted within its discretion in weighing the factors." *Id.* at ¶ 28.

Case No. 21 NO 0484

**{¶52}** Those venue factors include: whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; the length of time the child has resided outside this state; the distance between the court in this state and the court in the state that would assume jurisdiction; the relative financial circumstances of the parties; any agreement of the parties as to which state should assume jurisdiction; the nature and location of the evidence required to resolve the pending litigation, including the testimony of the child; the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and the familiarity of the court of each state with the facts and issues in the pending litigation. R.C 3127.21(B)(1)-(8).

**{¶53}** Here, the father initiated the action in Ohio and later asked to transfer the case by claiming Pennsylvania was the children's home state (as discussed supra). There was no compelling evidence at the July 26, 2019 hearing indicating Ohio would be an inconvenient forum besides the location of the children in Pennsylvania, which was said to be contrary to the residential parent's wishes at the time. In any event, the father's brief does not cite R.C. 3127.21 or specify Ohio was an inconvenient forum.

**{¶54}** On this topic, the brief merely complains the trial court did not provide him with a transcript of a call with the judge in Allegheny County and alleges the Ohio judge should not have told the Supreme Court (in a motion filed in his original action) that the court in Allegheny County found Pennsylvania to be an inconvenient forum. However, on October 17, 2019, the court in Allegheny County found the father "failed to establish proper jurisdiction/venue exists." That entry also indicated the existence of an Ohio order was confirmed by a procedural phone call with the Ohio judge. Pursuant to the relevant statute, a court of this state may communicate with a court of another state on a UCCJEA matter, and a "record need not be made of the communication" where the communication concerned court records and similar matters. R.C. 3127.09(A),(C). The arguments under this section are overruled.

Case No. 21 NO 0484

<u>Failure to Hold Mother in Contempt</u>

**{¶55}** The father's list of issues presented for review contains a query as to whether the trial court's failure to address his November 22, 2019 motion for contempt deprived him of redress. (We note the mother filed a motion to hold the father in contempt of the original custody order a month before he filed his motion, and the court did not issue a specific order in denying that motion either.) Initially, we point out the father's contention on this topic is not briefed in the argument section under the assignment of error as required by App.R. 16(A)(7). In any event, his argument is without merit.

**{¶56}** He filed the motion in Ohio seeking to hold the mother in contempt for violating a provision of the protection order obtained in Allegheny County, Pennsylvania on October 1, 2019 (after he reported the mother threatened him). That order contained a provision granting him "Temporary primary custody" over the son. Yet, his custody motion was thereafter dismissed by the court in Allegheny County in a final order issued on October 17, 2019. Contrary to the father's contention, the temporary custody provision in the earlier order did not remain effective.

**{¶57}** Moreover, after the Pennsylvania court found a lack of jurisdiction and venue, the trial court in the case at bar issued a decision ordering the father to immediately surrender physical custody of the son to the mother. (11/4/19 J.E.). Also, the court's findings of fact and conclusions of law cited the Pennsylvania court's November 20, 2019 decision, which dismissed his contempt request upon citing Ohio's November 4, 2020 custody order.

**{¶58}** Under such circumstances, a trial court can reasonably exercise its discretion to refrain from holding a hearing on a motion for contempt that the court intends to deny. Due process and statutory protections protect the *accused* by providing an opportunity to explain *before being held in contempt*. *Anderson v. Fleagane*, 7th Dist. Belmont No. 21 BE 0020, 2022-Ohio-___, ¶ 59-60 (and the movant cannot appeal on grounds of failure to hold a hearing without showing prejudice in that the motion would have been granted).

**{¶59}** In any event, there was a hearing. The court issued a summons on the father's motion and set a hearing for December 2, 2020, the same day as the continued

<u>Case No. 21 NO 0484</u>

hearing on modification was scheduled to proceed. As already noted, the hearing was then continued until January due to the father's original action pending in the Ohio Supreme Court. Two evidentiary hearings were eventually held after the motion for contempt was filed, and the court thereafter implicitly denied the father's motion.

**{¶60}** "Ohio law is well established that where the court fails to rule on an objection or motion, it will be presumed that the court overruled the objection or motion. Generally, when the trial court enters judgment without expressly determining a pending motion, the motion is also considered impliedly overruled." *Portofe v. Portofe*, 153 Ohio App.3d 207, 2003-Ohio-3469, 792 N.E.2d 742, ¶ 16 (7th Dist). *See also Batten v. Batten*, 5th Dist. Fairfield No. 09-CA-33, 2010-Ohio-1912, ¶ 82 (finding "silence on the issue of contempt to be an implicit denial of the motion"); *Bond v. Frank*, 2nd Dist. Miami No. 00CA55, 2001 WL 468386 (May 4, 2001) (rejecting the argument the court erred in failing to rule on the contempt motion and finding contempt motion was implicitly denied where the court entered judgment without mentioning the motion). Accordingly, Appellant was provided the right to redress his allegations and failed to show his contention had merit.

**{¶61}** For all of the foregoing reasons, the father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

**{¶62}** The father's second assignment of error alleges:

"The trial court erred by failing to relieve me of child support obligation and not providing adequate findings of fact and conclusions of law against the manifest weight of the evidence."

**{¶63}** As set forth in our Statement of the Case, the court issued two judgments on September 21, 2021: (1) the findings of fact and conclusions of law to support the July 20, 2020 denial of the father's 2019 motion to modify parental rights; and (2) the judgment granting of the father's 2021 motion seeking custody of the son. In the second judgment, the court expressed its findings and conclusions drawn from the new evidence. The court also incorporated its findings of fact and conclusions of law supporting the first judgment issued the same day. This assisted in reviewing the

history of the proceedings and the fact the situation existed prior to the most recent occurrences.

**{¶64}** We note one of the judgments listed in the father's notice of appeal was the September 27, 2021 denial of findings of fact and conclusions of law (which he requested as to the second September 21, 2021 judgment, the one granting his motion). Yet, the father does not specify an argument on the September 27, 2021 decision. We simply point out further findings of fact and conclusions of law are not required, even on a timely motion, where the judgment was not general. Civ.R. 52. *See also Saadi v. American Family Ins. Co.*, 7th Dist. Mahoning No. 20 MA 0083, 2021-Ohio-2360, ¶ 43 (a decision is not general merely because an appellant believes the court missed the point of a certain argument); *Shrock v. Mullet*, 7th Dist. Jefferson No. 18 JE 0018, 2019-Ohio-2707, ¶ 58 (request for findings and conclusions was moot where judgment was not general). The father recognized this when he acknowledged to the trial court that his request may be moot.

**{¶65}** Related to this assignment of error, the father contends the trial court abused its discretion in failing to relieve him of child support in the second September 21, 2021 judgment, which granted his 2021 motion for custody of the son. (Apt.Br. 21).[3] To review, the father's August 2021 motion said the mother agreed to transfer custody and said she would visit on Sundays. The motion was instigated by an August 19, 2021 Muskingum County juvenile court order releasing the child to the father's temporary custody to avoid juvenile incarceration.

**{¶66}** The trial court set the matter for an emergency hearing on September 1 in a judgment specifying the child had been released to the father's custody by a juvenile court and the son was living in Pennsylvania with the apparent consent of the mother. The father filed a parenting proceeding affidavit. Before the hearing, the court conducted an *in camera* interview with the son.

**{¶67}** The court found the mother had notice of the hearing by regular mail, certified mail, and telephone contact by a court employee (who spoke at the hearing).

---

[3] The father also incorporates his arguments under his first assignment of error and suggests child support would be terminated if we reversed the denial of his 2019 motion to modify parental rights. Because we affirmed that judgment under the first assignment of error, this argument fails.

Case No. 21 NO 0484

The court noted the emergency hearing was required to ensure the father could enroll the child in school or therapy. The sixteen-year-old received his high school diploma and was about to start college in Pittsburgh. The juvenile court judgment was marked as an exhibit, and the father submitted other exhibits as well. The father testified in support of his motion. He also noted there was no longer any issue between his wife and his son, referring to successful therapy.

**{¶68}** The court cited R.C. 3109.04 as governing its custody decision and R.C. 3109.051 as governing its visitation decision. (9/1/21 Tr. 4). The court concluded there was a change in circumstances, the child's best interest would be served by a grant of custody to the father, and the harm from the change was outweighed by the advantages. (9/1/20 Tr. 19). These findings were reiterated in the September 21, 2021 judgment designating the father as the residential parent and legal custodian under R.C. 3109.04 and providing parenting time to the mother (on Sundays) under R.C. 3109.051. The entry noted the court was treating the father's motion as a motion to modify parental rights and responsibilities (J.E. at 3) and to modify the designation of residential parent and legal custodian (J.E. at 1). The mother did not appeal from this order granting the father's motion, but the father did.

**{¶69}** As the father complains, the trial court's judgment made no mention of child support. (Apt.Br. 19). He argues the court should have terminated the prior order obligating him to pay child support to the mother for the son because he was granted custody and named the residential parent. The father asks this court to modify the trial court's judgment by terminating his child support obligation; he is not seeking child support from the mother. (Apt. Br. at 40). The mother did not file a brief.

**{¶70}** Although the father filed a motion to terminate child support when he filed his 2019 motion to modify custody, he did not file a motion to terminate child support when he filed his 2021 custody motion addressing the new circumstances. The question is whether the court erred in failing to sua sponte terminate child support for a child when the court was granting a parent's motion to modify parental rights and thereby designating the child support obligor as the residential parent and legal custodian of that child.

Case No. 21 NO 0484

**{¶71}** We note the father could have notified the child support enforcement agency of the existence of a statutory reason for which the child support order should terminate. *See* R.C. 3119.87 (stating a residential parent and legal custodian shall and an obligor may notify the agency of a reason for termination). One of the statutory "[r]easons for which a child support order should terminate through the administrative process" is a "[c]hange of legal custody of the child." R.C. 3119.88(A)(9).

**{¶72}** Although R.C. 3119.88(A) speaks of the administrative process for termination due to a change of legal custody, division (B) then states: "A child support order may be terminated by the court or child support enforcement agency for any reasons listed in division (A) of this section. A court may also terminate an order for any other appropriate reasons brought to the attention of the court, unless otherwise prohibited by law." R.C. 3119.88(B). Therefore, the trial court could properly terminate the child support order while it was changing legal custody, regardless of the lack of a specific motion or the non-utilization of the administrative process under R.C 3119.87.

**{¶73}** We also point out the custody statute applied by the trial court initially states "in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child" (where neither party seeks shared parenting):

> the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, *the responsibility to provide support for the children* and the right of the parent who is not the residential parent to have continuing contact with the children.

(Emphasis added.) R.C. 3109.04(A)(1). As set forth supra, division (E)(1) provides the restrictions on modification of a prior allocation.

**{¶74}** Although, division (A) is generally viewed as applying to an initial allocation, it would still apply to a subsequent modification order issued after the

Case No. 21 NO 0484

dictates of the modification standard in (E)(1) are found to apply. That is, when parental rights and responsibilities are modified and re-allocated to the other parent, the court is to "designate that parent as the residential parent and the legal custodian of the child" as set forth in R.C. 3109.04(A)(1). Likewise, if a new residential parent and legal custodian is designated, the court should "divide between the parents the other rights and responsibilities, including, but not limited to, the responsibility to provide support for the children * * *". *See* R.C. 3109.041(A)(1). The father's motion seeking custody invoked the court's jurisdiction to rule on other parental responsibilities which would necessarily be impacted by the court's modification of the prior custody order. *See generally* Civ.R. 75(J). For instance, the court addressed parenting time and provided the mother with visitation of every Sunday.

**{¶75}** In any event, as set forth above, a court may terminate child support when the legal custodian is changed to the obligor. R.C. 3119.88(B). As the trial court granted the father's 2021 motion and issued a decision modifying parental rights and responsibilities and naming the father as the residential parent and legal custodian of the son, it was unreasonable to refrain from addressing the father's continuing obligation to pay child support to the mother for a child for whom she was no longer the residential parent or legal custodian.

**{¶76}** As such, we reverse the September 21, 2021 judgment but only to the extent it fails to address the father's monthly child support obligation corresponding to the son. We must remand on this issue as it is for the trial court in the first instance to address child support termination and related matters. *See, e.g.*, R.C. 3119.30 (health care); R.C. 3119.82 (tax dependent).

## CONCLUSION

**{¶77}** For the foregoing reasons, we affirm the July 21, 2020 judgment (with September 21, 2021 findings of fact and conclusions of law) denying the father's 2019 motion to modify parental rights. As to the separate September 21, 2021 decision granting the father's 2021 motion and naming him the residential parent of the parties' son, we reverse this judgment to the extent it fails to address the father's child support

Case No. 21 NO 0484

obligation related to the son and remand for the trial court to address the issue of child support termination and any related matters.

Donofrio, P J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, we affirm the July 21, 2020 judgment (with September 21, 2021 findings of fact and conclusions of law) denying the father's 2019 motion to modify parental rights. As to the separate September 21, 2021 decision granting the father's 2021 motion and naming him the residential parent of the parties' son, we reverse this judgment to the extent it fails to address the father's child support obligation related to the son and remand for the trial court to address the issue of child support termination and any related matters according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**